**Van Z. KRIKORIAN, Appellant,**

v.

**DEPARTMENT OF STATE, Appellee.**

No. 91-5028.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 15, 1992.

Decided Jan. 29, 1993.

Van Z. Krikorian, pro se.

Charles F. Flynn, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., and R. Craig Lawrence and John D. Bates, Asst. U.S. Attys., were on the brief, for appellee.

Before MIKVA, Chief Judge; EDWARDS and HENDERSON, Circuit Judges.

Opinion for the court filed by Circuit Judge KAREN LeCRAFT HENDERSON.

1. 5 U.S.C. § 552 (1988).

KAREN LeCRAFT HENDERSON, Circuit Judge:

### I. BACKGROUND

In August 1982, the Department of State (Department) published in *The Department of State Bulletin* a five-page article entitled "Armenian Terrorism: A Profile" (Article). The Article included a "Note," which stated:

> Because the historical record of the 1915 events in Asia Minor is ambiguous, the Department of State does not endorse allegations that the Turkish Government committed a genocide against the Armenian people. Armenian terrorists use this allegation to justify in part their continuing attacks on Turkish diplomats and installations.

This position contradicted longstanding United States policy and was eventually retracted in the May 1983 *Bulletin.*

In an effort to determine the origin of the Article and the Note, Van Z. Krikorian made a Freedom of Information Act (FOIA)[1] request on October 7, 1983, asking the Department for "all Department of State memoranda, directives, letters and other records ... which relate to the August 1982 publication in *The Department of State Bulletin* of [the Article] and the accompanying 'Note'...." Appellant's FOIA Req. at 1. The Department searched the records of various offices and in January 1986 advised Krikorian that it had retrieved sixty-six relevant documents. Of those, the Department withheld twelve in full or in part, relying on three different exemptions from disclosure included in the FOIA. In response, Krikorian filed an administrative appeal in March 1986, challenging the exemption claims. He also questioned the adequacy of the search because the Department had retrieved no pre-August 1982 materials explaining how the Article came to be, an important part of his FOIA request. The Department issued its final decision in July 1986, releasing in full two of the originally withheld documents and part of another previously withheld document.

Krikorian then filed suit in district court to contest the Department's decision to withhold, in whole or in part, ten documents and the adequacy of its search. In seeking a protective order, the Department claimed that it had recovered all relevant records. Later, however, the Department released more material. The Department has yet to retrieve any relevant records pre-dating August 1982.

The parties filed cross-claims for summary judgment. Krikorian also requested *in camera* review of the withheld documents. The district court granted the Department's summary judgment motion, holding that the Department correctly withheld the ten documents because they fell within three FOIA exemptions: seven of them under exemption 1, one under exemption 3 and two under exemption 5. Moreover, although the court recognized "legitimate deficiencies" in the Department's search, it did not believe they were so severe as to constitute bad faith justifying *in camera* review. Mem. Op. at 8.

On appeal, we address three issues. First, do the ten withheld documents fall within one of the three FOIA exemptions? Second, if they do, should portions nonetheless be disclosed because they are either segregable or officially acknowledged? Third, did the Department conduct an adequate search for the requested materials? We affirm the district court's conclusion that each of the documents contains information exempt from disclosure under the FOIA. We remand, however, for the court to make specific findings whether portions of the withheld documents are segregable and whether any portions have been officially acknowledged. Finally, we remand for further proceedings to determine whether the Department conducted an adequate search for the requested material.

## II. THE EXEMPTIONS

Under the FOIA, "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B). The Department submitted affidavits from Ralph E. Lindstrom, Director of the Department's Office of Mandatory Review in the Classification and Declassification Center,[2] Sharon B. Kotok, Acting Chief of the Department's Information Access and Service Division of the Foreign Affairs Information Management Center (FAIM/IS), and Frank M. Machak, Chief of FAIM/IS, to support its decision to withhold certain documents and to defend the adequacy of its search.

### A. Exemption 1

Of the ten documents withheld in full or in part, the Department asserts that exemption 1 covers seven of them.[3] Under exemption 1, documents may be withheld if they are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). While the burden of proof is on the agency, a reviewing court " 'must recognize that the Executive departments responsible for national defense and foreign policy matters have unique insights into what adverse affects [sic] might occur as a result of public disclosures of a particular classified record.' " *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C.Cir.1981) (quoting S.Rep. No. 93–1200, 93d Cong., 2d Sess. 12 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6267, 6290). "Judges, moreover, lack the expertise necessary to second-guess such agency opinions in the typical national security FOIA case." *Halperin v. CIA*, 629 F.2d 144, 148 (D.C.Cir.1980). Accordingly, we " 'accord *substantial weight* to an agency's affidavit concerning the details of the classified status of the disputed record.' " *Military Audit Project*, 656 F.2d at 738 (quoting S.Rep. No. 93–1200, 93d Cong., 2d Sess. 12 (1974), *reprinted in* 1974 U.S.C.C.A.N. 6267, 6290) (emphasis in *Military Audit Project*).

The Department claims that the seven documents fall under exemption 1 be-

---

**2.** Lindstrom submitted two affidavits, one filed August 14, 1987, (Lindstrom Aff. I) and one filed September 10, 1987 (Lindstrom Aff. II).

**3.** Documents 79, 87, 93, 94, 96, 103 and 104.

cause they contain information about foreign governments that was communicated to our government by the foreign governments on a confidential basis, that would reveal United States intelligence sources and methods and that contains frank internal discussions of foreign relations matters. Lindstrom Aff. I at 6–9. For example, document 96 is a telegram reporting a conversation between an assistant secretary of state and a high-ranking foreign diplomat regarding Armenian terrorism. Release of the document would, in the Department's judgment, jeopardize "reciprocal confidentiality" and damage national security. Lindstrom Aff. II at 17–18.[4]

As another example, the Department withheld document 87, which was classified pursuant to section 1.3(a)(5) of Executive Order 12,356 because it relates to "foreign relations or foreign activities of the United States."[5] Document 87 is a telegram from the American Embassy in Paris to the Department reporting interviews with the Turkish Ambassador to France and a leader of the Armenian National Movement. The interviews were conducted by and originally published in a Paris newspaper. The Department released the published material but it withheld one paragraph of United States Embassy comment on a sensitive issue that "would be easily misinterpreted and could cause harmful repercussions in U.S. relations." Lindstrom Aff. II at 10.

The district court found the Department's summaries of the seven documents "adequately specific" to satisfy its burden of proof. Mem. Op. at 7; see Halperin, 629 F.2d at 148 (affidavits need to be "reasonably specific"). The court concluded that, were the Department required to be more specific, it "would be forced to breach its promises of confidentiality." Mem. Op. at 7. Having also reviewed the descriptions of the other documents included in Lindstrom's affidavits (relating to documents 79, 93, 94, 103 and 104), we agree with the district court that the seven documents contain confidential information that is exempt from disclosure under exemption 1.

**B. Exemption 3**

■ The Department invokes exemption 3 to justify withholding document 11. Exemption 3 permits agencies to withhold documents if they are "specifically exempted from disclosure by statute," provided the statute "(A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). The Department asserts that document 11 is not disclosable under the National Security Act, 50 U.S.C. §§ 401 et seq., which makes the Director of the Central Intelligence Agency "responsible for protecting intelligence sources and methods from unauthorized disclosure." 50 U.S.C. § 403(d)(3). It is well settled that section 403(d)(3) falls within exemption 3. Gardels v. CIA, 689 F.2d 1100, 1103 (D.C.Cir.1982); Halperin, 629 F.2d at 147.

■ Under section 403(d)(3), a document is exempt if the Agency "demonstrates that an answer to the query 'can reasonably be expected to lead to unauthorized disclosure of intelligence sources and methods.'" Gardels, 689 F.2d at 1103 (quoting Halperin, 629 F.2d at 147). In reviewing an exemption 3 claim, we do not closely scrutinize the contents of a withheld document; instead, we determine only whether there is a relevant statute and whether the document falls within that statute. Goland v. CIA, 607 F.2d 339, 350 (D.C.Cir.

---

**4.** Because this document affected the national security interest, the Department had classified it pursuant to section 1.3(c) of Executive Order 12,356. Exec. Order No. 12,356, 3 C.F.R. 166 (1982), reprinted in 50 U.S.C. § 401 note (1988). According to section 1.3(c) of Executive Order 12,356, "[u]nauthorized disclosure of foreign government information, the identity of a confidential source, or intelligence sources or methods is presumed to cause damage to national security."

**5.** Section 1.3(a)(5) of Executive Order 12356 states that "[i]nformation shall be considered for classification if it concerns ... foreign relations or foreign activities of the United States." Exec. Order No. 12,356, 3 C.F.R. 166 (1982), reprinted in 50 U.S.C. § 401 note (1988).

1978), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980).

Document 11 appears to be an earlier, thirty-page version of the Article. The Department states that portions [6] of document 11 are classified as secret and confidential because they contain "highly sensitive foreign government information, information concerning intelligence sources and methods, and information concerning foreign relations or foreign activities of the United States, the release of which reasonably could be expected to cause damage to the national security." Lindstrom Aff. I at 16. We agree that document 11 falls within section 403(d)(3) of the National Security Act and the district court correctly held that exemption 3 protects against its disclosure.

**C. Exemption 5**

■ Exemption 5 permits an agency to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The purpose of exemption 5 is to protect the "quality of agency decisions." *NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 150, 95 S.Ct. 1504, 1516, 44 L.Ed.2d 29 (1975). The exemption protects pre-decisional, not post-decisional, documents because only the former can have an effect on the decisionmaking process. *Id.* at 151, 95 S.Ct. at 1516.

■ Documents 97 and 102 fall within exemption 5 because they are pre-decisional, deliberative documents that in part discuss how the Department should respond to the reaction of some members of the public to the Article and the Note. Document 97 includes two draft letters proposing two options for replies to public inquiries about the Article and the Note. Lindstrom Aff. II at 20. Neither option was ultimately used by the Department but the letters reflect advisory opinions that are important to the deliberative process. See *Russell v. Department of Air Force,* 682

F.2d 1045, 1048–49 (D.C.Cir.1982) (withholding documents to prevent public from "misconstruing" officer's views as agency views); *Fisher v. United States Dep't of Justice,* 772 F.Supp. 7, 10–11 (D.D.C.1991) (withholding documents "to prevent public confusion that might be caused by disclosure of reasons and rationales that were not ultimately the grounds for the agency's action"), *aff'd,* 968 F.2d 92 (D.C.Cir.1992). Document 102 is an informal, undated note containing comments made by one Department officer to another about a third officer's memorandum on the Armenian genocide. Lindstrom Aff. II at 21. The document reflects part of the deliberative process used to address the genocide issue. Accordingly, the district court correctly held both documents exempt from disclosure.

**III. NON-EXEMPT DOCUMENTS**

**A. Segregability**

■ Although the ten documents fall within the three exemptions, portions of the documents may not be exempt. "It has long been a rule in this Circuit that nonexempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *Mead Data Cent., Inc. v. United States Dep't of Air Force,* 566 F.2d 242, 260 (D.C.Cir.1977). Indeed, the FOIA dictates that "[a]ny reasonably segregable portion of a record shall be provided ... after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). We have made clear that "[t]he 'segregability' requirement applies to all documents and all exemptions in the FOIA." *Center for Auto Safety v. EPA,* 731 F.2d 16, 21 (D.C.Cir.1984).

Recently, we described the type of detail an agency must provide in its *Vaughn* index [7] and affidavits so that a district court can adequately consider the segregability issue. In *Schiller v. NLRB,* 964 F.2d 1205 (D.C.Cir.1992), we reviewed the NLRB's de-

---

**6.** The Department blacked out one diagram and portions of two sections.

**7.** *See Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir. 1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

cision to withhold five of nine documents relating to the implementation of the Equal Access to Justice Act. The district court had found, after *in camera* review, that all five documents could be withheld under various exemptions. We agreed. Nevertheless, we remanded the case because the NLRB had not adequately described the exempted material, preventing a determination of the segregability of non-exempt material. We criticized the NLRB because its *Vaughn* index and affidavits discussed withheld memoranda without "correlat[ing] the claimed exemptions to particular passages in the memos." *Id.* at 1209. In other words, the index and affidavit "[we]re written in terms of documents, not information, but '[t]he focus in the FOIA is information, not documents, and an agency cannot justify withholding an entire document simply by showing that it contains some exempt material.'" *Id.* (quoting *Mead Data Central, Inc.*, 566 F.2d at 260). To address the inadequacy of the NLRB's materials, we held that "[t]he withholding agency must supply 'a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and *correlating those claims with the particular part of a withheld document to which they apply.*'" *Id.* at 1210 (quoting *King v. United States Dep't of Justice*, 830 F.2d 210, 224 (D.C.Cir.1987)) (emphasis in *Schiller*). A district court that "'simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof,'" errs. *Powell v. United States Bureau of Prisons*, 927 F.2d 1239, 1242 n. 4 (D.C.Cir.1991) (quoting *Church of Scientology v. Department of the Army*, 611 F.2d 738, 744 (9th Cir.1979)).

As we did in *Schiller*, we remand here because the district court did not make specific findings of segregability regarding each of the withheld documents. The district court itself noted that the plaintiff "refers to a few instances in which the agency might have been more exacting in its segregation of factual assertions from confidential thought processes." Mem. Op. at 8–9. For example, Document 103 purports to be the author's views "on the legal, historical, and policy aspects of genocide as it applies to Armenians." Lindstrom Aff. II at 22. This description is quite general and may well include segregable material. Likewise, the Department's affidavit describing document 94 broadly states that "*[p]ortions* of the four-page memorandum contain information provided by a foreign government," and "[t]he four-page memorandum is *primarily* an analysis and discussion of foreign policy considerations and options." Lindstrom Aff. II at 15–16 (emphasis added). The use of such qualifying language implies that other portions of the documents may be segregable.

Notwithstanding the remand, we recognize that the Department may be unable to describe in more specific terms the separate portions of the withheld documents. Unlike *Schiller*, where the NLRB was attempting to protect litigation strategies, the Department contends that it is protecting national security material regarding terrorism and foreign relations. The dangers of disclosure may be much greater. Nevertheless, we must insist that the affidavits provide a relatively detailed description. *Goldberg v. United States Dep't of State*, 818 F.2d 71, 78 (D.C.Cir.1987) (requiring affidavits to provide a "relatively detailed analysis" of withheld information), *cert. denied*, 485 U.S. 904, 108 S.Ct. 1075, 99 L.Ed.2d 234 (1988). We therefore leave it to the district court to determine on remand whether more detailed affidavits are appropriate or whether an alternative such as *in camera* review would better strike the balance between protecting sensitive foreign relations information and disclosing non-exempt information as required by the FOIA.

**B. Department's Official Acknowledgement**

 Krikorian also questions whether the Department has "officially acknowledged" any documents so that disclosure may be compelled even though the document falls within an FOIA exemption. For information to be "officially acknowledged," it (1) "must be as specific as the

information previously released," (2) "must match the information previously disclosed" and (3) "must already have been made public through an official and documented disclosure." *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C.Cir.1990). Krikorian focuses on document 11, the undated, apparently earlier thirty-page version of the Article. As noted earlier, document 11 contains blacked out portions. *See supra* note 6. Krikorian obtained an unclassified document, which the Department of State had released in December 1981 as Publication 9218. The unclassified document includes the released portions of document 11 as well as additional information. We cannot determine whether the additional information is identical to the redacted portions of document 11. Accordingly, we instruct the district court on remand to compare the two documents (whether by *in camera* review or by Department's supplemental showing) to determine whether document 11 has been "officially acknowledged."

## IV. ADEQUACY OF THE SEARCH

 Finally, Krikorian challenges the adequacy of the Department's search—the core issue in this appeal. In reviewing the adequacy of a search, we have stated that

> [w]hat the agency must show beyond material doubt is that it has conducted a search reasonably calculated to uncover all relevant documents. As we have recently made clear, '[t]he issue is *not* whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate.' The adequacy of an agency's search is measured by a 'standard of reasonableness,' and is 'dependent upon the circumstances of the case.'

*Weisberg v. United States Dep't of Justice*, 705 F.2d 1344, 1351 (D.C.Cir.1983) (emphasis in original) (citations omitted). If there is substantial doubt in the record as to the adequacy of the search, summary judgment cannot be granted to the agency. *Truitt v. Department of State*, 897 F.2d 540, 542 (D.C.Cir.1990).

 The district court listed the locations the Department searched to satisfy Krikorian's request, Mem. Op. at 3, but it did not expressly evaluate the adequacy of the search. Instead, it focused on the adequacy of the affidavits to rebut Krikorian's argument that the search was conducted in bad faith. *Id.* at 7–8. Notwithstanding our conclusion that Krikorian failed to demonstrate bad faith, the district court's inquiry should not have ended there. A finding of no bad faith does not necessarily equate to a finding that the search was adequate. Krikorian's FOIA request asked for all documents regarding the origin of the Article and the Note. At no point did the district court expressly conclude that the search was adequate or that it satisfied the reasonableness standard. On the contrary, it noted that the plaintiff "does point out legitimate deficiencies in defendant's processing of plaintiff's FOIA request." *Id.* at 8.

Krikorian's allegations of shortcomings in the Department's search make the absence of a finding as to the adequacy of the search troubling. First, as the district court noted, the Department apparently did not know how many documents it had recovered. *Id.* Second, Krikorian found Department documents relevant to his request, including the unclassified December 1981 version of the Article similar to document 11, that the Department had evidently failed to locate. Third, and perhaps most significant, the Department conceded that it did not search any of the eleven Regional Security offices that the Article's author expressly thanked in the Article for responding to questionnaires he had generated during his research. The district court discounted these matters as "relatively minor imperfections in the agency's response" because they did not rise to the level of bad faith. *Id.* at 9.

Accordingly, we remand this case to the district court to consider whether the Department's search adequately responded to Krikorian's FOIA request. Although we reach no conclusion whether the eleven Regional Security offices should be searched, nevertheless, if the district court concludes that the Department's search to date is

adequate, it should explain why a search of these offices is not necessary.

To sum up, we affirm the district court's holding that the ten documents either in whole or in part fit into recognized FOIA exemptions. We remand, however, so that the district court can make findings whether the Department should disclose any segregable portions of the withheld documents or any documents that have been officially acknowledged. In addition, on remand the district court is to address the adequacy of the Department's search.

*It is so ordered.*