George CANNING, Plaintiff,

v.

U.S. DEPARTMENT OF JUSTICE,
Defendant.

Civil Action No. 92–0463 (HHG).

United States District Court,
District of Columbia.

Nov. 3, 1994.

George Canning, Leesburg, VA, Pro Se.

Marina Utgoff Braswell, Robert Lawrence Shapiro, Kimberly Nickelson Tarver, U.S. Attorney's Office, Washington, DC, for defendant.

## MEMORANDUM ORDER

HAROLD H. GREENE, District Judge.

### I

George Canning ("Plaintiff") seeks materials from the Federal Bureau of Investigation ("FBI") pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, regarding four individuals who were interviewed in connection with investigations into the Lyndon LaRouche political movement.[1] Canning submitted five FOIA requests to various FBI offices, which, in turn, performed numerous searches, released a number of documents in full and in part, and withheld a number of documents in their entirety. Dissatisfied with the results of his request, Canning brought this action to compel a further search and release of the documents withheld.

The defendant agency has maintained that it has fully complied with the FOIA in this case, and the FBI therefore requests summary judgment in its favor. Plaintiff opposes this motion and makes two motions of his own.

Plaintiff has essentially two complaints about the FBI's response to his FOIA request. First, Plaintiff argues that the FBI improperly withheld material under a number of different exemptions. To correct this, Plaintiff asks for a supplemental *Vaughn* index to either justify the use of the exemptions or to force the release of improperly withheld documents. Second, Plaintiff argues that the searches performed were inadequate. To correct this, Plaintiff asks the Court to compel further searches in certain

FBI offices regarding certain individuals and files.

After careful study of the motions filed with this Court and the accompanying documents, including the materials released to Plaintiff, the Court concludes that each party's motions should be granted in part and denied in part. This Memorandum Order discusses each of the contested areas in turn.

### II

### Material Withheld Under Various Exemptions

Plaintiff alleges that the FBI has improperly relied on certain exemptions to justify withholding documents. It is his claim that the material withheld has not clearly been shown to fall within the scope of the various exemptions. Because of this, Plaintiff has requested a further *Vaughn* index to justify the continued withholding of the documents. For most of the exemptions claimed, the Court finds that they are probably justified, but the Court nevertheless finds that some further explanation by the FBI is needed to clarify the exact scope of the information for which the government claims an exemption.

#### A. Grand Jury Material Withheld Under Exemption 3

Some of the material still in contention has been withheld by the FBI under the authority of Exemption 3, which protects from disclosure matters that are "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). In this case, the relevant "statute" is Rule 6(e) of the Federal Rules of Criminal Procedure, which prohibits disclosure of "matters occurring before the grand jury." Fed.R.Crim.P. 6(e).

There is no dispute that Rule 6(e) is one of the "statutes" that Exemption 3 covers. *Fund for Constitutional Government v. National Archives,* 656 F.2d 856, 867 (D.C.Cir. 1981) (holding that Rule 6(e) "counted" for these purposes because it was positively enacted by Congress); *Senate of Puerto Rico v. U.S. Department of Justice,* 823 F.2d 574, 582 n. 23 (D.C.Cir.1987) (affirming same).

---

1. Mr. Canning is a political associate of the movement and seeks these materials in aid of

Mr. LaRouche's attempt to overturn his criminal conviction.

Thus, material protected from disclosure under Rule 6(e) would clearly be protected from disclosure under Exemption 3. The only real issue in this case is whether the material withheld by the FBI from the Interim Prosecutive Report of February 11, 1988 ("Interim Prosecutive Report") is the sort of material that Rule 6(e) would protect.

The FBI has maintained throughout this case that the material it has withheld falls within the scope of Rule 6(e). In his first affidavit to this Court, Agent Michael Turner of the FBI asserted that the information withheld included the names of individuals who were subpoenaed to testify before the grand jury, the material subpoenaed, and actual grand jury testimony. Turner Declaration 1, at ¶ 24. Turner also alleged that releasing this information "would violate the secrecy of the Grand Jury proceedings and reveal the scope and direction of the same." *Id.*

Not content with this justification, Plaintiff has raised questions about this affidavit and its sufficiency. Plaintiff claims that Agent Turner's justification cannot meet the test for summary judgment because it leaves open genuine issues of material fact. Most importantly, Plaintiff questions how Agent Turner could have personal knowledge about the redacted material. Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Motion for a Supplemental *Vaughn* Index and to Compel Further Search, at 9–10. Plaintiff argues that, if the material really was of the sort protected from disclosure by Rule 6(e), Agent Turner himself should have been prohibited from viewing it because he was not on the list of individuals with special access to what were otherwise secret documents. *Id.*

■ The Court finds that this fact raises some questions that must be answered before summary judgment · may be granted. For if Agent Turner did see these materials without special clearance, then this might be an indication that the material is no longer considered secret. And if this is the case, the material would no longer be protected by either Rule 6(e) or Exemption 3. If, on the other hand, Agent Turner has never seen the redacted material, then his affidavit is insufficient for summary judgment because it does not indicate how Turner knew that the material was from the grand jury.

To clear up this confusion, Plaintiff has requested a further *Vaughn* index, consisting of affidavits written by a person with personal knowledge about the withheld information, showing a basis for knowledge that the information came from the grand jury, and a characterization of the documents. *Id.* at 11. Given the confusion on this issue, the Court finds that such a further index would be helpful. It could clear up the lingering question of how Agent Turner knew that material was from the grand jury.

Clearing up this ambiguity is the first hurdle that the government must clear before the Court could grant summary judgment. If the FBI is unable to produce affidavits showing how this material falls under the Rule 6(e) umbrella, then the FBI would not be entitled to summary judgment as a matter of law.

If, on the other hand, the FBI is able to show that the material came from the grand jury, then summary judgment would probably, but not necessarily, be appropriate. In his motions to this Court, Plaintiff has raised some question about whether the material at issue was also available outside the grand jury process. At issue is the nature of the Interim Prosecutive Report from which the material was redacted. Plaintiff argues that the interim report was based on information gathered outside the grand jury process and therefore its disclosure would not reveal the secrets of the grand jury. The FBI never directly addresses this argument. Instead, it simply relies on Agent Turner's blanket statement that the material all came from the grand jury. From the parts of the report that have been released to Plaintiff, it is clear that the interim report was prepared for presentment to the grand jury, but its not clear that revelation of such a document would "disclose matters occurring before the grand jury."

■ If the report was prepared for presentment to the grand jury, some of its contents would naturally have come to the

attention of the grand jurors. But it is not clear that the report was so intimately connected to the workings of the grand jury so as to fall under the protective umbrella of Rule 6(e). To clear up this ambiguity, the FBI must assert, by affidavit, how the withheld material would reveal the secrets of the grand jury. For as the Court of Appeals recently noted, Rule 6(e) does not

> draw "a veil of secrecy . . . over all matters occurring in the world that happened to be investigated by a grand jury." . . . . There is no *per se* rule against disclosure of any and all information which has reached the grand jury chambers. . . . [T]he touchstone is whether disclosure would "tend to reveal some secret aspect of the grand jury's investigation" such matters as "the identities of the witnesses or jurors, the substance of testimony, the strategy or direction of the investigation, the deliberation or questions of jurors, and the like." The disclosure of information "coincidentally before the grand jury [which can] be revealed in such a manner that its revelation would not elucidate the inner workings of the grand jury" is not prohibited.

*Senate of Puerto Rico v. U.S. Department of Justice*, 823 F.2d 574, 582 (D.C.Cir.1987). *See also Fund for Constitutional Government v. National Archives*, 656 F.2d 856, 870 (D.C.Cir.1981) (holding that the fact that a grand jury has subpoenaed documents concerning a particular matter does not insulate that matter from investigation in another forum). The Court of Appeals in this Circuit has also made clear that the government can be required to provide more information to show why the material should be exempt. *Senate of Puerto Rico*, 823 F.2d at 582. This is a sensible solution in the instant case as well.

In sum, then, in order for the FBI to make the threshold showing for summary judgment on the issue of the material withheld under Exemption 3, they must provide further *Vaughn* material in the form of affidavits by persons with personal knowledge of the grand jury material, explaining how this material falls under the protection of Rule 6(e).

**B. Material Withheld Under Exemption 7(C) on the Theory That It Would Constitute an Unwarranted Invasion of Privacy of Individuals Who Provided Information**

■ The FBI withheld a number of documents and redacted a number of others under the authority of Exemption 7(C) on the theory that release of the material would constitute an unwarranted invasion of the privacy of individuals who provided information to the FBI. 5 U.S.C. § 552(b)(7)(C). In order to assess the propriety of this use of Exemption 7(C), the Court must balance the privacy interests of the individuals involved against the public interest in disclosure. *Davis v. U.S. Department of Justice*, 968 F.2d 1276, 1281 (D.C.Cir.1992). And even if the Court finds, as it does in this case, that the privacy interests prevail, there is still a question of whether there is segregable material that should still be released. *PHE, Inc. v. U.S. Department of Justice*, 983 F.2d 248, 252 (D.C.Cir.1993); *Krikorian v. U.S. Department of State*, 984 F.2d 461, 466 (D.C.Cir.1993). This Memorandum Order addresses each of these concerns in turn.

1. The portions withheld under Exemption 7(C) which Plaintiff contests involve three individuals, all of whom gave the FBI information in connection with the FBI's investigation of the Lyndon LaRouche organization.[2] The three individuals also all testified in state criminal trials against members of that organization.

■ Our Court of Appeals has made clear that informants and witnesses have cognizable privacy interests that may be protected by Exemption 7(C). *SafeCard Servs. v. S.E.C.*, 926 F.2d 1197, 1205 (D.C.Cir.1991) (holding that Exemption 7(C) "affords broad[ ] privacy rights to suspects, witnesses, and investigators"); *Fitzgibbon v. C.I.A.*, 911 F.2d 755, 767 (D.C.Cir.1990) (stating that "Exemption 7(C) takes particular note of the

**2.** Originally, the plaintiff contested material withheld regarding several other informants, but that material has since been released, and those objections are thus moot. This Memorandum Order therefore only addresses the material that regards the three remaining individuals.

**456**

'strong interest' of individuals, whether they be suspects, witnesses, or investigators, in not being associated unwarrantedly with alleged criminal activity").

■ Plaintiff acknowledges this case law, but claims that the particular individuals involved have no privacy interest because they have waived their confidential status. Plaintiff thus ties the privacy issue under Exemption 7(C) to the question of what is "confidential" under Exemption 7(D).[3] Even if this borrowing were appropriate, its not clear how it would advance Plaintiff's case.

Plaintiff's basic argument seems to be that, since these three individuals have testified and otherwise made public their involvement in the LaRouche investigation, they have waived their confidentiality and thus they have no real privacy interest. The cases under Exemption 7(D) do not clearly support this conclusion, however. These cases clearly give FOIA requestors access to information that has previously been testified to, but they are hesitant to go any further. As one case put it:

> Even when the source testifies in open court, as did the informant in this case, he does not thereby "waive the [government's] right to invoke Exemption 7(D) to withhold .... information furnished by a confidential source not actually revealed in public." ... The government is obliged to disclose only the "exact information" to which the source actually testified.

*Davis v. U.S. Department of Justice,* 968 F.2d 1276, 1281 (D.C.Cir.1992). *See also Parker v. Department of Justice,* 934 F.2d 375, 380–81 (D.C.Cir.1991) ("Public testimony by 'confidential sources' does not waive the FBI's right to invoke exemption 7(D) to withhold the identity of a confidential source or information furnished by a confidential source not actually revealed in public.").

The cases all agree that merely because an informant was willing to have some information divulged for law enforcement purposes does not mean that he or she waived all confidentiality and all interests in privacy. *U.S. Department of Justice v. Landano,* 508 U.S. 165, 174, 113 S.Ct. 2014, 2020, 124 L. Jd.2d 84, 95 (1993) ("A source should be deemed confidential if the source furnished information with the understanding that the FBI would not divulge the communication except to the extent the Bureau thought necessary for law enforcement purposes.").

Given this, it is not clear in this case that the individuals who gave information waived all confidentiality and all interests in privacy. And since "disclosure of records regarding private citizens, identifiable by name, is not what the framers of FOIA had in mind," *U.S. Dept of Justice v. Reporters' Committee for Freedom of the Press,* 489 U.S. 749, 765, 109 S.Ct. 1468, 1478, 103 L.Ed.2d 774 (1989), the Court must look with care at the public interests which Plaintiff asserts outweigh the clear privacy interests of the individuals who assisted the FBI.

■ 2. Plaintiff argues that the strong public interest in "the integrity of the administration of justice" outweighs the privacy interests discussed above. Memorandum of Points and Authorities in Opposition to Defendant's Motion for Summary Judgment and in Support of Plaintiff's Motion for a Supplemental *Vaughn* Index and to Compel a Further Search, at 10. More particularly, he alleges that the information he seeks in his FOIA requests contains *Brady* material wrongfully withheld by state prosecutors in a state criminal action against Lyndon LaRouche and several of his associates. *Id.* Plaintiff argues that the public interest would be served if the information were released and used in an attempt to overturn Mr. LaRouche's conviction.

---

**3.** Its not completely clear that the definition of "confidential" from Exemption 7(D) can be directly imported into the Exemption 7(C) analysis. For one thing, Exemption 7(D) requires no balancing—a source is either confidential or its not, and if its confidential, its protected, no matter what the public interest in disclosure is. *Schmerler v. F.B.I.,* 900 F.2d 333, 336 (D.C.Cir. 1990) ("Once the government has demonstrated that the sources are confidential, the statute does

not require the government to justify the withholding against claims that the confidentiality is no longer warranted or that the public interest weighs in favor of disclosure."). This suggests that the analysis for Exemption 7(D) involves different considerations than the analysis for Exemption 7(C). Because the Court ultimately *does not* find the 7(D) case law particularly helpful to Plaintiff's argument, however, this distinction is not critical.

In support of this argument, Plaintiff cites a decision from the Third Circuit which holds that "a FOIA request for information implicating the *Brady* rule" advances an "indirect public purpose." *Ferri v. Bell*, 645 F.2d 1213, 1218 (3d Cir.1981). This case held that "the public has an important stake in ensuring that criminal justice is fairly administered; to the extent disclosure may remedy and deter *Brady* violations, society stands to gain." *Id.*

As true as these statements may be, they are not wholly applicable here because Plaintiff is seeking the material from an entity that is totally separate from the entity that allegedly violated the *Brady* rule. According to Plaintiff's allegations, the *Brady* material was withheld by *state* prosecutors. Plaintiff now seeks evidence of that from a *federal* agency. Plaintiff thus does not allege any misconduct on the part of the FBI—he merely wants evidence of misconduct by a separate sovereign.

The only cases in this Circuit to consider such a request have found that the desire to expose wrongdoing on the part of another party is not enough to satisfy the "public interest" prong of the balancing test. *Johnson v. U.S. Department of Justice,* 1991 WL 251940, at *1, 1991 U.S. LEXIS 16417, at *2 (D.D.C.1991). *See also Nishnic v. U.S. Department of Justice,* 671 F.Supp. 776, 791 (D.D.C.1987) (finding plaintiff's interest in gaining exculpatory evidence a "decidedly private interest"). They found that "in the absence of compelling evidence of misconduct" by the agency responding to the FOIA request, the "indirect public purpose of ensuring fair criminal trials" did not outweigh individual privacy interests. *Johnson,* 1991 WL 251940, at *1, 1991 LEXIS 16417, at *2. *See also Nishnic,* 671 F.Supp. at 791 (finding that "plaintiff's reliance on a general public interest in access to information of alleged relevance to ongoing litigation is not supported by authority").

These holdings comport with holdings by both the Supreme Court and the Court of Appeals for this Circuit which affirm that "the basic purpose of the FOIA [is] to open agency action to the light of public scrutiny." *U.S. Department of Justice v. Reporters' Committee for Freedom of Press,* 489 U.S. 749, 774, 109 S.Ct. 1468, 1482, 103 L.Ed.2d 774 (1989). Our Court of Appeals recently held that when "governmental misconduct is alleged as the justification for disclosure, the public interest is 'insubstantial' unless the requestor puts forward 'compelling evidence that the agency denying the FOIA request is engaged in illegal activity' and shows that the information sought is necessary in order to confirm or refute that evidence." *Davis v. U.S. Dept. of Justice,* 968 F.2d 1276, 1282 (D.C.Cir.1992); *Accord SafeCard Servs. v. S.E.C.,* 926 F.2d 1197, 1205–06 (D.C.Cir. 1991).

Plaintiff has not even hinted at misconduct on the part of the FBI in this case.[4] Instead, he has made unsubstantiated claims that state prosecutors withheld *Brady* material and that a state witness may have perjured himself. These unsupported allegations are insufficient to meet the "public interest" prong of the Exemption 7(C) balancing. The privacy interests are thus paramount, and the information that would invade the individuals' privacy is protected from disclosure under Exemption 7(C).

3. Even though the balancing weighs in favor of protecting the material withheld by the FBI, there is still the question of whether there is any segregable material that should be disclosed. *Krikorian v. U.S. Department of State,* 984 F.2d 461, 467 (D.C.Cir.1993) (stating that a district court that "simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof,' errs"). Plaintiff's basic argument here is that, even if the names and identifying material regarding these individuals were properly withheld under Exemption 7(C), any information provided by those individuals should not be protected by that exemption.

In one of his more recent filings, Plaintiff identified a number of different situations where he believes that Exemption 7(C) is

---

4. The plaintiff does, of course, challenge the FBI's response to his FOIA request. But this alleged misconduct was not the driving force for the request. It arose, if at all, after the filing of the request.

being used to shelter not only the names of confidential sources, but also information provided by those sources. What piqued Plaintiff's interest about these particular passages was the fact that they were originally withheld under the authority of both Exemption 7(C) and Exemption 7(D). These two exemptions in tandem would protect not only a confidential source's name, but also any information provided by that source. Due to changes in the law regarding Exemption 7(D), the FBI removed references to that exemption next to the passages at issue here.[5] What Plaintiff wants to know, therefore, is whether the passages, which are now withheld only under the authority of Exemption 7(C), still contain information provided by the sources that would not identify the sources. In particular, Plaintiff questions the withholding of material on the following pages, all included in Exhibit A of Defendant's Motion in Further Support of Its Motion for Summary Judgment:

*Audrey Carter Material*
* Serial 196B–1446–736
* Serial 196B–1446–750
* Serial 196B–1446–312

*Marie Fincham Material*
* Serial 196–5475–149 (pages B42–43, B47, B66–67, B69, B70, B81, B83, B84, B85, B86, B92, B94, B96, B97, B113)

*Charles Zimmerman Material*
* Serial 196B–1446–779

Because these blocks remain redacted without any further explanation by the FBI, it is impossible for this Court to rule on whether segregable material is included that should be released. And because we cannot rule without making a finding on segregability, the Court directs the FBI either to provide further affidavits or indices on the contested blocks establishing that no segregable material is included or to release the segregable material. For as the Court of Appeals recently made clear, "nonexempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions." *PHE, Inc. v. U.S. Department of Justice,* 983 F.2d 248, 252 (D.C.Cir.1993). The FBI is thus ordered to provide explanation about the above noted passages.

## C. Material Withheld under Exemption 7(C) on the Theory That Disclosing It Would be an Unwarranted Invasion of Privacy of Individuals Merely Mentioned

In addition to the Exemption 7(C) material discussed above, the FBI also withheld information under Exemption 7(C) on the theory that disclosing it would constitute an unwarranted invasion of privacy of individuals who were merely mentioned in the documents. Plaintiff only contests one document withheld under this rationale. This document is a routing slip at the beginning of the materials pertaining to Audrey Carter. Plaintiff concedes that if the redacted material refers to an individual, the material was properly withheld. If it refers to an agency or organization, however, Plaintiff contends that it should be released.

Unlike some of the more complex issues posed by this case, this dilemma can easily be resolved. The government must indicate whether the material refers to an individual or an organization. If it refers to an individual, then the government is entitled to summary judgment as a matter of law because there is no genuine issue of material fact. If, on the other hand, it refers to an organization or includes segregable material, the government needs to either release it or give further explanation for why it should still be withheld. The government should clarify this issue by either filing an affidavit based on personal knowledge that establishes that it is an individual, or by releasing the material or providing further explanation as to why it should still be withheld.

---

5. The Supreme Court issue an opinion in 1993 that clarified how courts were meant to determine whether or not a source was "confidential." *U.S. Department of Justice v. Landano,* 508 U.S. 165, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993). In light of this opinion, the FBI re-reviewed all the documents previously withheld to determine whether any should now be released. They decided that a number of documents should be released. They also decided that a number of passages could not be withheld under Exemption 7(D), but could still be withheld under other exemptions.

## D. Confidential Source Material Withheld under Exemption 7(D)

After much debate and wrangling over the material withheld under this exemption,[6] the remaining issue is a rather simple one: FBI Agent Michael Turner has stated that all the material that is still redacted under the authority of this exemption came from individuals who had been given express assurances of confidentiality, and Plaintiff questions how Turner can have personal knowledge of this. The FBI could end these questions and settle any remaining issues by submitting a supplemental affidavit from Agent Turner explaining the procedures by which he ascertained that express assurances had been given. With such an affidavit on the record, there would be no remaining issues of material fact and this aspect of the case would be closed. If Agent Turner can show that express assurances of confidentiality were given, the government would be entitled to summary judgment as a matter of law since Exemption 7(D) clearly covers information obtained from sources that have been given express assurances of confidentiality.

## III

### Adequacy of the Searches

In addition to the specific complaints raised by Plaintiff regarding the FBI's use of exemptions, he also raises a more general complaint that the FBI searches were inadequate, and he asks this Court to compel further search to correct this alleged inadequacy.

In support of this request, Plaintiff identifies a number of documents that he believes should have been located in response to his request. Some of the documents that Plaintiff identifies are actual FBI documents that Plaintiff obtained from other members of the LaRouche organization who had filed similar FOIA requests. In addition to these documents that Plaintiff can prove exist, he also speculates about more documents that he

believes must exist, yet were not located in response to his request.

The question before this Court is whether Plaintiff's speculations and factual proffers are sufficient to show that the searches done in this case were inadequate. With one notable exception discussed below, the Court finds that Plaintiff's evidence is not sufficient to raise material questions about the adequacy of the FBI's searches.

▮▮▮▮▮ Under the law in this Circuit, an agency responding to a FOIA request must " 'conduct[ ] a search reasonably calculated to uncover all relevant documents,' and, if challenged, must demonstrate 'beyond material doubt' that the search was reasonable." *Truitt v. Department of State*, 897 F.2d 540, 542 (D.C.Cir.1990). And when a court reviews the adequacy of such a search, " 'the issue is *not* whether any further documents might conceivably exist but rather whether the government's search for responsive documents was adequate.' The adequacy of an agency's search is measured by a 'standard of reasonableness,' and is 'dependent upon the circumstances of the case.' " *Krikorian v. Department of State*, 984 F.2d 461, 468 (D.C.Cir.1993). Most importantly, the issue on a motion for summary judgment is whether the record leaves "substantial doubt as to the sufficiency of the search." *Id.* If it does not, summary judgment for the agency is appropriate on this issue.

▮▮▮ Plaintiff argues in his papers to this Court that the documents he has uncovered or speculates exist raise "substantial doubt" about the adequacy of the searches. First, he points to actual documents that were released in response to other FOIA requests, but apparently were not located in response to his request. The fact that these few documents were not found or released in response to Plaintiff's request is not fatal, however, since the Court of Appeals has made clear that "a search is *not* unreasonable simply because it fails to produce all relevant material." *Meeropol v. Meese*, 790 F.2d 942, 953 (D.C.Cir.1986). Thus, the fact that Plaintiff

---

**6.** At the outset of this judicial action, there were a number of additional issues regarding the use of this exemption, including some questions about material relating to State Police Officer Larry Burchett. These ancillary issues have either been dropped or resolved by further releases by the FBI. Plaintiff's objections have thus become moot.

was able to find a handful documents through other sources is not necessarily indicative of an inadequate search, especially in the context of a search that produced hundreds of documents.

■ The next type of evidence that Plaintiff marshals in support of his motion is evidence in the released material that suggests that further documents exist. Through careful study of the documents released to him, Plaintiff has surmised that certain other documents must exist. As the Court of Appeals for this Circuit indicated in a recent case, however, such evidence is not necessarily conclusive of the issue. In *Meeropol v. Meese*, the plaintiffs, "[t]hrough meticulous search and examination of the files that were turned over to them," were "able in several instances to uncover references to other, seemingly relevant, files which had not been produced." *Meeropol v. Meese*, 790 F.2d 942, 952-53 (D.C.Cir.1986). The plaintiffs in *Meeropol*, like Plaintiff in this case, argued that these references indicated "that the searches must have been conducted in bad faith, and that there [were] additional records yet to be found." *Id.* The D.C. Circuit did not find such arguments persuasive in that case, and this Court does not find them persuasive here, either. As the government eloquently argued in their motion to the Court, "it would not be reasonable to expect [the government] to closely analyze every piece of responsive information for clues as to additional locations of responsive documents." Defendant's Reply on its Motion for Summary Judgment and Opposition to Plaintiff's Motions for a Further Search and a Supplemental *Vaughn* Index, at 7.

■ The third type of evidence that Plaintiff offers in support of his claim is pure speculation about files that Plaintiff is convinced must exist. In *Meeropol*, the Court of Appeals rejected the notion that such speculations were sufficient to raise material questions about the adequacy of the search. *Id.* The language of that case seems particularly appropriate here:

In most cases, [plaintiffs'] conclusion that such files exist stems either from their discovery of references to these files in other documents, or from a conviction that a particular subject was of such importance that a file on that subject *must* have been created.... These claims cannot be conclusively refuted, since to do so the government would have to prove a negative—that the files in question do not exist. We agree with the district court that these assertions are insufficient to raise material questions of fact with respect to the adequacy of the search.

*Id.* at 953. Thus, in this case, as in *Meeropol*, mere speculation about the existence of files that were not produced is not enough to foreclose summary judgment on this issue.

The above evidence offered by Plaintiff is insufficient to raise "material questions" about the adequacy of the searches. As regards all the searches contested under the above theories, then, the Court finds that the FBI's searches were adequate and that the government is entitled to summary judgment as a matter of law.

■ There is one search, however, that does raise material questions and that requires further attention. The search in question involves an individual named Charles Zimmerman. Plaintiff questions how no files could be located on Zimmerman, a victim who lost $2.5 million. Unlike all the other arguments raised by Plaintiff on the issue of the adequacy of the searches, the Court finds this argument persuasive. Plaintiff was able to document that the FBI had investigated this man, but the Tampa office claimed to have found no documents cross-referenced to his name. Through documents later obtained through a separate source, however, Plaintiff discovered an explanation for this absence. It seems that Mr. Zimmerman was known to the authorities as Charles Cunningham, rather than Charles Zimmerman and information regarding him was thus filed under "Cunningham" rather than "Zimmerman." [7]

---

7. Plaintiff speculates in one footnote of his memorandum that the FBI deliberately filed the information about Zimmerman under a different name to foil FOIA requests like his own. Because Plaintiff offered no evidence whatsoever to support this theory, it is pure speculation that the

In response to this discovery, Plaintiff requested a further search under the newly discovered name. The government refused to do so on the theory that this was a wholly new FOIA request that should be filed as such. The Court does not agree with this conclusion. Plaintiff presented evidence that the FBI was aware of the fact that this individual was known by two names. Given this, it seems clear that an adequate search should have produced files listed under both names. Because the agency failed to do so, even after the cross-reference was brought to its attention, the agency's search was inadequate. To correct this, the FBI is hereby ordered to perform an additional search under the name "Charles Cunningham." Assuming that this search produces the relevant files listed under that name, the FBI will then have satisfied the test and there will be no further issues of inadequacy.

In sum, then, the Court finds that, as to all the searches except the one regarding Charles Zimmerman, the evidence offered by Plaintiff does not raise such "material questions" about the adequacy of the search as to foreclose summary judgment on this issue. The Court finds that, except for the Zimmerman search, the FBI's searches were adequate and that the government is entitled to summary judgment as a matter of law on the issue of the adequacy of the searches. As regards the Charles Zimmerman request, the FBI is ordered to perform a further search.

### IV

Accordingly, for the reasons stated above, it is this 3rd day of November, 1994, hereby

ORDERED that Plaintiff's Motion for a Supplemental *Vaughn* Index be granted to the extent that the defendant must:

1) explain how the material redacted under Exemption 3 falls under the protection of Rule 6(e) of the Federal Rules of Criminal Procedure,

2) either justify the withholding of material under Exemption 7(C) or release segregable material, and

3) explain the procedures by which Agent Michael Turner ascertained that express assurances of confidentiality had been given for material withheld under Exemption 7(D);

and it is further

ORDERED that the partial summary judgment be granted to the defendant on the issue of the adequacy of the searches, except as regards the Charles Zimmerman search; and it is further

ORDERED that Plaintiff's Motion to Compel Further Search be granted as regards the Charles Zimmerman request; and it is further

ORDERED that Plaintiff's Motion to Compel Further Search be otherwise denied.

Court will not acknowledge. In the absence of evidence to the contrary, the Court must assume that the decision to file under the name Cunningham was innocently made.