BRITISH EMPIRE STEAM NAV. CO., LIMITED, v. ELTING, Collector of Customs.

No. 39.

Circuit Court of Appeals, Second Circuit.

Dec. 10, 1934.

Kirlin, Campbell, Hickox, Keating & Mc-Graun, of New York City (Delbert M. Tibbetts and Joseph F. Luley, both of New York City, of counsel), for appellant.

Martin Conboy, U. S. Atty., of New York City (George B. Schoonmaker, Asst. U. S. Atty., of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge.

The steamship Caroni River, owned by the appellant, arrived at the port of New York October 16, 1930, having as part of its crew thirty-seven Chinese seamen. When tied up at its pier, an immigration inspector boarded the vessel, examined these members of the crew, and ordered that they be detained on board. The Chinese members were unable to satisfy the inspector that they did not intend to abandon their calling as seamen. The crew list had been visaed by the American consul and the Chinese passports were issued by the republic of China.

The master stated, in his affidavit of protest against the imposition of fines, that the immigration inspector spoke only a few words to a few of the Chinese in the English language, and that he believed his men were bona fide seamen. Some of the members of the Chinese crew had British seamen's discharge books, but whether they were Chinese members of the crew does not appear.

On October 16, 1930, an order of detention was served on the master of the vessel, and on the same day a notice was also served upon Furness Withy & Co., Limited, agents for this British corporation owned ship, directing it to detain the thirty-seven Chinese members of the crew. Ten aliens escaped that evening about 10 p. m., all but four of whom were captured. Furness Withy & Co., Limited, the agent, was served with notices of hearing with respect to the imposition of fines amounting to $4,000 because of the failure to produce those who escaped. The attorneys for the owner of the vessel entered an appearance on behalf of the vessel and its owners and opposed the fine, which was paid by the appellant in order to obtain clearance for the vessel. The duty to detain rests upon the one who is required to do so by the inspector's order. Lancashire Shipping Co. v. Elting (C. C. A.) 70 F.(2d) 699; United States v. Columbus Marine Corp. (C. C. A.) 62 F.(2d) 795; United States v. J. H. Winchester & Co., Inc. (C. C. A.) 40 F.(2d) 472. The form of notice given to the master does not appear.

The statute provides: "(a) The owner, charterer, agent, consignee, or master of any vessel arriving in the United States from any place outside thereof who fails to detain on board any alien seaman employed on such vessel until the immigration officer in charge at the port of arrival has inspected such seaman" or "fails to detain such seaman on board after such inspection or to deport such seaman if required by such immigration officer or the Secretary of Labor to do so, shall pay * * * the sum of $1,000 for each alien seaman in respect of whom such

failure occurs." Section 20 of the 1924 Immigration Act (8 U. S. C. § 167 (a), 8 USCA § 167 (a). Under this section, the Secretary of Labor may impose the penalty in an administrative proceeding. Lloyd Royal Belge, etc., v. Elting (C. C. A.) 61 F.(2d) 745.

■ The agent of the vessel was given an opportunity to be heard; and the master's principal, the owner of the vessel, was heard, by the Secretary of Labor, in opposition to the imposition of the fine. But it is contended that the fine was illegally imposed, first, because the Secretary of Labor imposed the fine against the ship and not against any one of the parties mentioned in the statute; and, second, that the examination of the seamen by the immigration inspector was arbitrary and unfair and therefore any detention order issued as a result of the examination was invalid. Imposition of the fines, as shown by the records of the Secretary of Labor, justified the government's claim that they were imposed against the agent and owner of the steamship or either of them. The statute imposes the fine against the owner, agent, charterer, consignee, or master. The collection of fines imposed under section 20 frequently depends upon the opportunity for withholding clearance of the vessel from which the alien seamen have escaped.

■ The protest filed was entitled "In the matter of a proposed penalty of $4,000," and it was submitted on behalf of the steamship Caroni River. Administrative records are not expected to have the same accuracy which would be expected of judicial orders and decrees. The administrative record shows that the agent and owner, the latter through the master, were served and were given an opportunity to be heard. They were each charged with a violation of the statute. The agent was not shown to have been placed under a duty to detain prior to the escape; therefore no fine could be imposed upon it. The owner was, however, placed under such a duty because of notice given to the master. This in turn imposed the duty upon the ship, for the master was in charge of the ship, and the corporate owner was thus notified through the master in charge. Since there was an inspection by the inspector and a detention order, if it was improperly served, it could be corrected by an appeal to the Department of Labor for a modification or revocation of the order. It was wrong to act in violation of the order of detention. Navigazione Libera Triestina v. U. S. (C. C. A.) 36 F.(2d) 631. The privilege of an alien seaman landing for a shore visit or his obligation to remain on shipboard must be determined by the immigration inspector who conducts the examination on board ship. Lloyd Royal Belge, etc., v. Elting (C. C. A.) 61 F.(2d) 745.

■■ Nor was the examination unfair or arbitrary. While a seaman may by writ of habeas corpus examine into the fairness of the examination by the immigration inspector, testing the right to be detained and denied shore leave [United States ex rel. D'Istria v. Day (C. C. A.) 20 F.(2d) 302], that obviously cannot be followed by a shipowner who has been ordered to detain a seaman. When he protests before the Secretary of Labor, the shipowner may claim that the examination was unfair. The immigration inspector must necessarily proceed with expedition in his examination for the purpose of learning whether a seaman intends to remain one or whether he intends to abandon his calling. He must rely upon impressions which he receives through the examination of the seamen, bringing to his assistance his experience and information that may properly come before him respecting the membership of the crew. Each case would necessarily vary, but with it all the examination must be fair and reasonable. We may not say that this examination was arbitrary because every Chinese member of the crew was detained or that each Chinese member of the crew was not individually examined. The inspector had the right to take notice of the fact that the Chinese are continuously smuggling themselves into this country, since they are prohibited entry by immigration laws. The decision of the Secretary of Labor, if there be any facts upon which to base his conclusion, should not be easily overturned. The presumption of regularity supports his finding in the absence of a clear showing to the contrary. United States v. Chemical Foundation, 272 U. S. 1, 47 S. Ct. 1, 71 L. Ed. 131; Smith v. St. Louis & So. W. Ry. Co., 181 U. S. 248, 258, 21 S. Ct. 603, 45 L. Ed. 847; United Thacker Coal Co. v. Com'r (C. C. A.) 46 F.(2d) 231, 233 (C. C. A. 1). We do not think the evidence in this record supports the claim of unfairness in the examination of the seamen prior to the service of a notice of detention.

■ The Secretary of Labor had jurisdiction because the seamen were aliens and because he directed that they be detained. The notice served was addressed to Furness Withy & Co., Limited, agents for the vessel Caroni River. It gave notice that, if a hearing was desired as to whether a fine should be imposed, "you will be allowed 60 days from the

date of this notice for that purpose, and the vessel on which the said alien arrived will be granted clearance papers when she is ready to sail and allowed to proceed on her outward-bound voyage upon condition that you deposit with the collector of customs at this port, * * * the sum indicated below as security for the payment of the said fine should it be imposed." This does not indicate that it was the intention to impose the fine against the master or owner, but the owner's attorney appeared on behalf of the vessel and its owner. The owner had a hearing, to which he was entitled under the statute. The law does not require that the order to detain be in writing or in any particular form. The requirements of the act are fulfilled if the person ordered to detain the seaman understands the nature of the order and knows which seamen are to be detained. Navigazione Libera Triestina v. United States (C. C. A.) 36 F.(2d) 631. When, on October 16, 1930, notice was served, the names of the Chinese seamen were not known, it was thought important to serve notice of detention as soon as possible to avoid their escaping from the vessel contrary to the inspector's order. The order of detention was not invalid because the names of the Chinese members of the crew were not given in the notice. By appearing and protesting at the hearing, the appellant had its full opportunity, and therefore due process was accorded to it in making answer to the imposition of the penalty and a judgment entered against them was not invalid for any defect in the order of detention.

■ The owner failed to detain the seamen, and under these circumstances the Secretary of Labor had no discretion. It was his duty to impose a fine which he had no authority to remit. No recovery of the fine paid may be had on the alleged irregularities or defects suggested.

Judgment affirmed.

L. HAND, Circuit Judge (dissenting).

This case appears to me to be ruled by United States ex rel. D'Istria v. Day, 20 F.(2d) 302 (C. C. A. 2). We there held that an inspection, though it might be summary, must be fair in the sense that the inspector must give the alien a chance to be heard. Perhaps we should not examine it as we do the examination of a board of special inquiry; the stake is much less. But I think it ought at least to be an honest inspection, a real inspection, an inspection which actually determines, however ill, the inspector's decision, to some extent anyway. I can see no serious possibility of abuse in going so far as that; the carrier must prove that the inspection was a sham, and that will not often be easy. It chances here that the affidavit of the master was uncontradicted; he swore that the inspector said, at once on boarding the ship, that he would exclude all Chinese seamen; the inspection that followed was perfunctory and plainly in sequence upon his announced purpose. I do not believe that Congress meant that the bare ipse dixit of the inspector should be final; he must fulfill the condition upon which alone he was authorized to act. If he might not validly detain the aliens, I cannot see why he should be able to impose a penal duty upon the carrier when they escape. I would not indeed put trammels upon an inquiry which must be informal, but it does seem to me that there may be limits to the autocratic powers even of an immigration inspector.