### UNITED STATES ex rel. KUSTAS v. WILLIAMS et al.

### THE STEEL SEAFARER.
#### No. 117, Docket 22182.

United States Court of Appeals

Second Circuit.

Argued Dec. 6, 1951.

Decided Feb. 20, 1952.

Kirlin, Campbell & Keating, New York City, Delbert M. Tibbetts, New York City, of counsel, for appellants.

Frank J. Parker, U. S. Atty., Brooklyn, N. Y., George Taylor, Asst. U. S. Atty., Brooklyn, N. Y., Louis Steinberg, Dist. Counsel, and Oswald I. Kramer, Attorney, Immigration and Naturalization Service, New York City, of counsel, for appellee.

Before SWAN, Chief Judge, and L. HAND and AUGUSTUS N. HAND, Circuit Judges.

SWAN, Chief Judge.

This appeal presents the question whether, upon the return from a foreign voyage of a bona fide alien seaman who signed on at a United States port as a member of the crew of an American vessel, the examining immigration inspector has authority on the basis of confidential information to order the seaman detained on board at all United States ports, thereby in effect ordering that he be excluded and deported, without the inspector's decision being reviewed by the Commissioner of Immigration or being subject to judicial review by writ of habeas corpus.

The facts are not in dispute. The relator is a native and national of Greece. He has never been admitted to the United States except as a seaman in pursuit of his calling. Since September 1943 he has been sailing as a member of the crew of American vessels. He has married an American citizen, and when on shore he resides with his wife and their two children in New York City. In January 1951, having been passed by the Coast Guard for such service, he signed on in New York as a member of the crew of the S. S. Steel Seafarer, owned by the Isthmian Steamship Company, for a foreign voyage and return. When the vessel returned to Boston on May 7, 1951 the relator applied for admission as a seaman under 8 U.S.C.A. § 203(5). The return to the writ alleges that upon the basis of information of a confidential nature the immigrant inspector who examined the relator ordered him detained on board as an alien who was excludable under section 1 of the Act of October 16, 1918 as amended by section 22 of the Subversive Activities Control Act of 1950, 8 U.S.C.A. § 137. The vessel proceeded coastwise to New York where a further order was served upon the Master to detain the relator on board at all United States ports. At the habeas corpus hearing the relator testified that he had not been told by any representative of the Immigration Service why he was being detained. His testimony was not contradicted. The return to the writ recites that "The information upon the basis of which the immigrant inspector ordered the relator detained on board has been classified as confidential by the Commissioner of Immigration and Naturalization and may not be revealed." It was not revealed at the hearing.

In the District Court the Master of the vessel was represented by the attorneys for the shipowner whose interest in the litigation is obvious, since the expense of detention and of deportation, if the validity of the inspector's order is sustained, will fall upon the owner of the vessel. See 8 Code Fed.Regs. § 120.36; 8 U.S.C.A. § 168. From the order dismissing the writ both the shipowner and the relator have appealed, but only the shipowner has filed a brief in this court, the relator, as we are told, being financially unable to do so. The District Director of Immigration and Naturalization is the appellee.

The appellee contends that the detention orders attacked by the relator's writ were issued pursuant to valid regulations adopted November 28, 1950 to implement the provisions of the Act of October 16, 1918 as amended by section 22 of the Subversive Activities Control Act of September 23, 1950, 8 U.S.C.A. §§ 137 to 137-8. The regulations relied upon are sections 120.19, 174.2 and 174.4 of Title 8, Code of Federal Regulations. The appellants reply that these regulations, insofar as they purport to permit an immigrant inspector, on confidential information, summarily to exclude a bona fide seaman without the inspector's decision being reviewed by the Attorney General are invalid because in conflict with the procedure laid down in sections 4 and 5 of the 1950 Act, 8 U.S.C.A. §§ 137-3, 137-4. This precise point appears to be one of first impression.

Knauff, U. S. ex rel., v. Shaughnessy, 338 U.S. 537, 70 S.Ct. 309, 94 L.Ed. 317, sustained the power of the Attorney General to exclude an alien without a hearing, on the basis of information of a confidential nature the disclosure of which would be prejudicial to the public interest. Although the appellee argues that the reasoning of the court in the Knauff case applies with equal force to the action of the inspector in the case at bar, the decision is not a controlling authority not only because it was decided before enactment of the 1950 Act but also because the order of exclusion was made by the Attorney General not by an immigrant inspector. A case more closely in point is United States ex rel. Chew v. Colding, 2 Cir., 192 F.2d 1009. There the alien was a returning seaman who had previously been admitted for permanent residence and sought admission for the purpose of resuming his legal residence. On the basis of information of a confidential nature the immigration inspector at the port of San Francisco ordered him detained on board, and upon arrival of the vessel at New York in March 1951 the temporary

exclusion of the relator was continued. This court affirmed the dismissal of the relator's writ, but it is to be noted that the alien was not seeking shore leave to pursue his calling and that an amended return to the writ recited that on April 18, 1951 the Acting Attorney General under the authority contained in section 175.57 of Title 8 of the Code of Federal Regulations ordered that the relator's temporary exclusion be made permanent. It was on the basis of the amended return that the district court dismissed the writ. United States ex rel. Kwong Hai Chew v. Colding, 97 F.Supp. 592. In the case at bar the return to the writ contains no allegation that either the Attorney General or the Commissioner of Immigration, if it be assumed that the former may delegate his authority to the latter, has ever considered the relator's case and ordered his temporary exclusion made permanent.

Section 5 of the Subversive Activities Control Act of 1950, 8 U.S.C.A. § 137–4, printed in the margin,[1] provides that "any alien who may appear to the examining immigration officer at the port of arrival to be excludable under section 1 shall be temporarily excluded," and that "after the case is reported to the Attorney General", if he is satisfied that the alien is excludable under section 1 on the basis of confidential information the disclosure of which would be detrimental to the public interest, he may deny any further inquiry by a board of special inquiry and order such alien to be excluded and deported. Literally, the words "any alien" include alien seamen. But the appellee argues that the statute should not be construed to embrace seamen applying for shore leave in pursuit of their calling because they have traditionally been treated summarily and have never been entitled to a hearing before a board of special inquiry or to an appeal from the decision of the examining immigrant inspector. This is true where the issue decided by the inspector has been the bona fides of the seaman's intention to land in pursuit of his calling. All the cases which have come to our attention have involved only this issue, and if the inspector's decision of that issue is arbitrary it may be reversed on habeas corpus.[2] But if, as now claimed, on the basis of confidential information which may not be revealed, the inspector may exclude and deport the seaman as a subversive alien, the relator is deprived of judicial review however arbitrary the decision may be. Legislation no doubt might accomplish that result. See Knauff, U. S. ex rel., v. Shaughnessy, 338 U.S. 537, 70 S.Ct. 309, 94 L.Ed. 317.

Although section 5 of the 1950 Act expressly directs that the determination to deport without revealing the reason shall be made by the Attorney General, we shall assume arguendo that he may by regulations delegate such power to the Commissioner of Immigration. As we read the regula-

1. "§ 137–4. Temporary exclusion of suspect subversive aliens; determination and deportation

"Notwithstanding the provisions of sections 152 and 153 of this title, which relate to boards of special inquiry and to appeal from the decisions of such boards, any alien who may appear to the examining immigration officer at the port of arrival to be excludable under section 137 of this title shall be temporarily excluded, and no further inquiry by a board of special inquiry shall be conducted until after the case is reported to the Attorney General and such an inquiry is directed by the Attorney General. If the Attorney General is satisfied that the alien is excludable under 137 of this title on the basis of information of a confidential nature, the disclosure of which would be prejudicial to the public interest, safety, or security, he may deny any further inquiry by a board of special inquiry and order such alien to be excluded and deported."

2. United States ex rel. U. S. Lines v. Watkins, 2 Cir., 170 F.2d 998; British Empire Steam Nav. Co. v. Elting, 2 Cir., 74 F.2d 204, 206, certiorari denied 295 U.S. 736, 55 S.Ct. 648, 79 L.Ed. 1684; Lloyd Royale Belge Soc. v. Elting, 61 F.2d 745, certiorari denied 289 U.S. 730, 53 S.Ct. 526, 77 L.Ed. 1479; United States ex rel. D'Istria v. Day, 2 Cir., 20 F.2d 302; United States ex rel. Wei Yan Mun v. Shaughnessy, D.C., 89 F. Supp. 743, 744; The Navemar, D.C., 41 F.Supp. 846.

tions upon which the appellee relies in the case at bar, they do not purport to do more than that. Section 174.2 of 8 Code Fed. Regs. provides that an alien seaman seeking to enter as a non-immigrant pursuant to 8 U.S.C.A. § 203(5) shall be ordered detained on board, if he appears to the examining immigration officer to be excludable under section 1 of the Act of October 16, 1918 as amended by the 1950 Act. The next section, 8 C.F.R. § 174.3, directs that "The examining immigration officer temporarily excluding the alien shall promptly report such action to the officer in charge of the district having jurisdiction over the port of arrival who shall communicate such report to the Commissioner."

The record before us contains nothing to indicate compliance with this provision. Sec. 174.4(b), 8 Code Fed.Regs., provides that if the Commissioner determines that the alien is inadmissible under section 1 of the Act of October 16, 1918 as amended, and that the inadmissibility is based on information of a confidential nature the disclosure of which would be detrimental to the public interest, "he may deny any hearing or further hearing by a board of special inquiry and order such alien to be excluded and deported." We interpret this section to require the Commissioner to make the necessary determinations with respect to the particular alien who has been temporarily excluded or ordered detained on board by an immigrant inspector. All that the return to the writ says relative to this subject is that the information upon the basis of which the inspector ordered the relator detained on board "has been classified" as confidential by the Commissioner "and may not be revealed." We do not understand this to mean that the Commissioner received the inspector's report and made a determination that the information on which the inspector acted was confidential. It may well mean merely that the Commissioner has issued instructions that certain types of information have been classified by him as confidential. This is not a compliance with the regulation.

For the foregoing reasons we think that the order must be reversed and the relator discharged without prejudice to the institu-tion of deportation proceedings in accordance with law.

L. HAND, Circuit Judge (dissenting).

So far as I can find, before 1950 the situation never reached the courts of a seaman seeking shore leave who was excluded, not because the inspector doubted his bona fides, but because he was a "subversive" within the classes excluded under the Act of 1918. But if such a case had arisen, the courts would certainly not have confined the inspector's decision to the issue of the seaman's bona fides, and required a Board of Special Inquiry to determine the issue of "subversiveness." Such a course would have held up the ship until the question was decided, which ordinarily would not be justified by the interest at stake: the privilege of a short sojourn here to enable the seaman to get a new berth. Still less would it justify taking the seaman off the ship and compelling the owner to ship him back on a new ship, the alternative. If I am right about that, it seems to me to follow that the Act of 1950 did not change the practice and require the inspector to refer the case to the Commissioner, as my brothers believe. As I understand it, they think that this follows from §§ 174.4; 174.3 and 174.2 of the Regulations; for certainly it does not follow from any provision in the Act alone. Section 22—which amended § 1 of the Act of 1918—merely redefined the "classes" who "shall be excluded from admission"; and § 4 of the Act of 1950 dealt with members of classes who have already "entered," and has nothing to do with exclusion. Section 5 on the other hand does deal with exclusion, but it covers only those to whom §§ 16 and 17 of the old act, 8 U.S.C.A. §§ 152, 153, gave the remedy of a Board of Special Inquiry. This follows, not only from the fact that the section dealt only with the occasions when the alien may have recourse to a Board of Special Inquiry, but from the text itself. The section provides that those who the inspector thinks may be within § 1 of the Act of 1918 shall be "temporarily excluded"; and a seaman, seeking shore leave, is never "temporarily excluded"; he is "detained" on the ship, the detention being itself the final, and only,

denial of his application.[1] Therefore, when § 5 speaks of temporary exclusion, it seems to me that it would not support a regulation which would cover seamen seeking shore leave.

Moreover, the regulations themselves follow this distinction. Section 174.2 does indeed begin with indeterminate language: "Any alien including an alien seaman * * shall be excluded temporarily," although all alien seamen are not seamen seeking shore leave. Had the section stopped at this, there would, however, have been verbal support for saying that it implied some sort of subsequent action in the case of all seamen as well as other aliens, regardless of § 5. Be that as it may, the section immediately went on to say that "in the case of a seaman seeking to enter" for shore leave only, he "shall be ordered detained on board, if the inspector thinks that he is a "subversive"; and § 174.4 confirms this, for it is limited to aliens who have been "temporarily excluded," thus adopting the distinction of § 174.2 and the diction of § 5. Section 174.3 adopts the same phrase. The proviso in § 174.4(a) may perhaps be thought to put this conclusion in some doubt: it declares that "nothing in this part shall be deemed to authorize a hearing before a board of special inquiry in the case of" a seaman seeking shore leave. It could be argued that, although the Commissioner could never send such a seaman to a Board of Special Inquiry, nevertheless this implied that he was to "determine" his admissibility, which he could not do if the inspector's decision was final. In answer I submit that, considering the statute and the regulations together, it is more reasonable to read the proviso as added out of abundant caution so as to insure against recourse to a board under any possible circumstances, than to read into it by indirection an appeal from the inspector to the Commissioner. For these reasons I do not believe that the statute or the regulations have changed the procedure by giving a seaman seeking shore leave what is in effect an appeal to the Commissioner from the inspector.

However, I agree that, even though such a seaman is not entitled to that appeal, it does not follow that he may not have a review of his exclusion in the courts by habeas corpus. As the cases cited in my brothers' opinion show he has that remedy on the issue of his bona fides, and, consistently, he ought to have it on the issue of "subversiveness." On such a review, of which this is one, the record must show that the inspector had no ground for finding that he was a "subversive," just as it must show that the inspector had no ground for denying that he was a seaman seeking shore leave when the issue is of bona fides. In the case at bar the petition alleged that no information was given the relator "as to the cause of his detention except that the petitioner was being held for security reasons." The return alleged that "the information upon the basis of which the immigration inspector ordered the relator detained on board has been classified as confidential by the Commissioner of Immigration." The parties have agreed that no question of fact is involved, so that we are to take the return as true. If the relator had been an ordinary alien seeking entry, the inspector would have referred his case to the Commissioner; and, if the Commissioner had denied him a hearing before a Board of Special Inquiry and excluded him, he would not have been allowed access to the information on which the Commissioner had acted, unless the Commissioner had thought best to reveal it. On habeas corpus the relator could not have got access to the evidence: all the justices appear to have agreed on that in Knauff v. Shaughnessy, 338 U.S. 537, 70 S.Ct. 309, 94 L.Ed. 317. If I am right in thinking that a seaman seeking shore leave does not have an appeal to the Commissioner, the inspector, who is in that event the only tribunal, must have authority to use information which the Commissioner has "classified" as secret without revealing it. Whether his use of it to exclude the seaman has been proper is indeed another matter; he may be wrong about that, and the seaman, consistently with his right as to his bona fides, should have the same limited review that he has on that is-

---

1. § 167, Title 8 U.S.C.A.

sue. The trouble is that it will be impossible to review the inspector's decision on that issue without access to the secret evidence, and he cannot succeed, except perhaps in the event that he can show that the inspector has not used the "classified" information. The case at bar is not such a case, and the writ must fail, I should think. The difference between my brothers and me apparently is this: they believe that the Commissioner must decide personally the issue of "subversiveness" in each case; I believe that he may "classify" certain information as secret, communicate it to the inspectors and authorize them to act upon it; and that, when he does, the only issue is whether the inspector has made use of it.