Stephanie A. PATTERSON,
Plaintiff–Appellant,

v.

INTERNAL REVENUE SERVICE,
Defendant–Appellee.

No. 92–4049.

United States Court of Appeals,
Seventh Circuit.

Argued April 13, 1995.

Decided June 8, 1995.

A. Benjamin Goldgar, Marianne C. Holzhall (argued), Keck, Mahin & Cate, Chicago, IL, for plaintiff-appellant.

Sue Hendricks Bailey, Asst. U.S. Atty., Indianapolis, IN, Gary R. Allen, Murray S. Horwitz (argued), Dept. of Justice, Tax Div., Appellate Section, Washington, DC, for defendant-appellee.

Before POSNER, Chief Judge, ESCHBACH, and MANION, Circuit Judges.

ESCHBACH, Circuit Judge.

Stephanie Patterson made two separate requests for information from the Internal Revenue Service ("IRS") pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. In complying with her requests, the IRS disclosed some responsive documents, withheld in full or in part other documents based upon certain statutory exemptions, and reported that it was unable to identify any documents responsive to some of her inquiries. In an action brought by Patterson to compel fuller disclosure, the district court granted summary judgment in favor of the IRS on the basis of the claimed exemptions. On appeal, Patterson challenges the adequacy of the IRS' showings with respect to the exemptions and the adequacy of its search in response to the inquiries for which it was unable to locate any documents. We affirm as to the adequacy of the search. Because, however, the IRS failed to make the requisite showing to establish its right to some of the claimed exemptions, we reverse and remand in part.

## I.

Patterson was an employee at the Indianapolis Office of the IRS. As a result of disciplinary actions taken against her by the IRS, she made two FOIA requests. On July 30, 1990, Patterson submitted a request for information to the Office of the Assistant Commissioner of the IRS. In this request, she sought "[a]ll **Investigative/Inspections Reports** dated between *April 1, 1989* and *July 30, 1990*. The subject matter of these reports would include any matter relating and/or involving the undersigned." In response, Steven Raisch, Disclosure Officer for the IRS' Office of the Chief Inspector, searched the computer index of investigative files maintained by the Office of the Chief Inspector for documents indexed under Patterson's name. His search identified five items, four of which were released in full on August 15, 1990. With respect to the fifth item, the IRS withheld page 8 in full and parts of pages 2, 3, 4 and 7,[1] relying on the exemption specified in 5 U.S.C. § 552(b)(7)(C) for "records or information compiled for law enforcement purposes," which, if produced, "could reasonably be expected to constitute an unwarranted invasion of personal privacy."

Patterson's second request for information from the IRS was made on August 18, 1990. In this request, she sought the following information from Robert Boyer, Associate Chief of the Indianapolis Appeals Office:

(1) Written documentation dated **11/6/89** requesting "action be taken against Ms. Patterson for a violation of Section 215.2 of the Rules of Conduct,...." See attached memoranda dated **4/18/90**;

---

1. It appears that these "items" were files and the "pages" were individual single page documents within the files. *See* Exhibit 10 to Patterson's Omnibus Motion of Reconsideration of Court's: (1) Order on Motion for Summary Judgment (2) Order on Motion for Sanctions (3) Order on Motion for Recusal of Presiding Judge; And Motion for Vacation of Dismissal in Related Case IP-88-1311.

(2) All attendant documentation associated with, and/or that forms the bases for, the request delineated in item one above; and

(3) Any and all documentation, or "**system of records**", in your possession or under your control, authored by you or originating from any other employee, involving the undersigned

At the direction of Boyer, Patterson forwarded her request on September 5, 1990 to Ken Spencer, Disclosure Officer for the Indianapolis IRS Office. A month later, Spencer wrote to Patterson explaining that the November 6, 1989 document ("Boyer Memorandum") was being withheld pursuant to exemption 5 U.S.C. § 552(b)(5) since it was an "inter-agency or intra-agency memorandum[ ] or letter[ ] which would not be available by law to a party other than an agency in litigation with the agency." Spencer also reported to Patterson that he was unable to locate any documents responsive to items (2) or (3) of her request.

After exhausting her administrative remedies,[2] Patterson, appearing pro se, filed this action on October 17, 1990 contending that the IRS had improperly withheld documents under the FOIA. The IRS responded by claiming exemptions under 5 U.S.C. §§ 552(b)(5), (b)(7)(C), and (b)(6), the latter provision protecting "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." On August 26, 1992, the IRS moved for summary judgment, attaching to its motion several Declarations in support of its entitlement to the claimed exemptions. William J. Martin, an IRS Disclosure Litigation attorney, offered a declaration in support of the IRS' entitlement to withhold information responsive to Patterson's first request based upon exemptions (b)(7)(C) and (b)(6) ("Martin Declaration").[3] Stan Cleveland, the Disclosure Officer for the Indianapolis Office of the IRS who replaced Kenneth Spencer when he left, submitted a declaration in support of the IRS' entitlement to withhold information responsive to Patterson's second request based upon exemption (b)(5) ("Cleveland Declaration"). The Cleveland Declaration also described the process by which Spencer searched for documents to support the IRS' claim that it could not locate any responsive documents to the second and third items in the second FOIA request. Patterson filed a response to the motion for summary judgment and requested that the district court impose sanctions against the government's counsel. On November 3, 1992, the district court granted the IRS' motion for summary judgment based on exemptions 7(C) and 5 and denied Patterson's motion for sanctions. Patterson filed a timely notice of appeal.[4]

## II.

"[D]isclosure, not secrecy, is the dominant objective" of the FOIA. *Department of Air Force v. Rose*, 425 U.S. 352, 361, 96 S.Ct. 1592, 1599, 48 L.Ed.2d 11 (1976). Because of this, our obligation is "to construe FOIA exemptions narrowly in favor of disclo-

**2.** Patterson filed administrative appeals in response to the partial denials of both her requests and the IRS failed to respond within 10 days. Thus, she was deemed to have exhausted her remedies. 5 U.S.C. § 552(a)(6)(C).

**3.** The IRS' actual motion for summary judgment, as opposed to the Martin Declaration, did not rely upon exemption (b)(6). Instead, in the IRS' brief in support of its motion, the IRS explicitly informed the district court that it "reserves argument at this time with respect to its exemption 6 claims."

**4.** On April 19, 1994, this court filed an order appointing counsel for Patterson and directing both parties to fully rebrief the appeal addressing the following issues:

(1) Whether the government, to meet its substantive evidentiary burden on summary judgment, must show that the investigatory information withheld was *compiled for law enforcement purposes* within the meaning of 5 U.S.C. § 552(b)(7), distinguishing investigations conducted for adjudicative or enforcement purposes from internal monitoring of the agency's own employees and operations?

(2) Whether Patterson has preserved the issue of whether the government failed to prove that its investigation of its own employees was for law enforcement purposes rather than for general monitoring of agency activities?

(3) Whether the government in moving for summary judgment claimed exemption 6 status applied to the undisclosed information and if raised, whether the government satisfied its burden of justifying nondisclosure under 5 U.S.C. [552](b)(6).

sure." *United States Dep't of Justice v. Landano*, — U.S. —, —, 113 S.Ct. 2014, 2024, 124 L.Ed.2d 84 (1993); *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 151–52, 110 S.Ct. 471, 474–75, 107 L.Ed.2d 462 (1989); *Matter of Wade*, 969 F.2d 241, 246 (7th Cir.1992). The government agency bears the burden of justifying its decision to withhold the requested information. 5 U.S.C. § 552(a)(4)(B); *Becker v. IRS*, 34 F.3d 398, 402 (7th Cir.1994). "A district court may grant summary judgment to the government in a FOIA case only if 'the agency affidavits describe the documents withheld and the justifications for nondisclosure in enough detail and with sufficient specificity to demonstrate that material withheld is logically within the domain of the exemption claimed.'" *PHE, Inc. v. Department of Justice*, 983 F.2d 248, 250 (D.C.Cir.1993) (quoting *King v. United States Dep't of Justice*, 830 F.2d 210, 217 (D.C.Cir.1987)). Since "[b]oth the court and the requester must look to the affidavits for an explanation of the agency's decision to withhold information ... an affidavit that contains merely a 'categorical description of redacted materials coupled with categorical indication of anticipated consequences of disclosure is clearly inadequate.'" *Id.* Thus, the threshold inquiry in

our review is to examine *de novo* the IRS' declarations in "considering whether the [district] court had an adequate factual basis for the decision rendered." *Becker*, 34 F.3d at 402; *Matter of Wade*, 969 F.2d at 245.

**A. First FOIA Request**

Patterson argues on appeal that the IRS failed to uphold its burden to justify its nondisclosure of certain information in response to her first request. The IRS responds that the Martin Declaration, or, more specifically, two-and-a-half paragraphs of the five page declaration, is sufficient to establish the IRS' nondisclosure pursuant to both exemptions 6 and 7(C).[5] This Declaration, however, is insufficient.

**1. Exemption 7(C)**

■ The exemption which the IRS relied upon in the district court is exemption 7(C) for "records or information compiled for law enforcement purposes" which "could reasonably be expected to constitute an unwarranted invasion of personal privacy." The Declaration is primarily concerned with reciting the statutory language. The only statement which attempts to describe the documents and the applicability of the exemption is ¶ 11

---

**5.** The entire text of the Martin Declaration as it relates to exemptions 6 and 7(C) was contained in ¶¶ 9–11:

9. The information which the Service is withholding from the five pages at issue regarding the plaintiff's request to the Office of the Chief Inspector consists of references to the results of investigations concerning Service employees other than the plaintiff, and of addresses and other identifying information related to these employees. The documents containing this information are from the "Miscellaneous Information Files" maintained by the Office of the Chief Inspector. As explained in paragraphs 10 and 11, below, this information is exempt pursuant to FOIA subsections (b)(6) and (b)(7)(C).

10. Exemption (b)(6) of the FOIA permits the government to withhold all information about individuals in "personnel and medical and similar files" where the disclosure of such information would constitute a clearly unwarranted invasion of personal privacy. All information which "applies to a particular individual" meets the threshold requirement for exemption 6 protection. *Department of State v. Washington Post Co.*, 456 U.S. 595, 602, 102 S.Ct. 1957, 1962, 72 L.Ed.2d 358 (1982). The Service has determined, pursuant to FOIA ex-

emption (b)(6), that disclosure of portions of these five pages could constitute a clearly unwarranted invasion of the personal privacy of two service employees other than the plaintiff. Furthermore, the Service can identify no public interest favoring disclosure.

11. The portions of the Inspection records withheld pursuant to exemption (b)(6) are also exempt pursuant to FOIA subsection (b)(7)(C). Subsection (b)(7)(C) of the FOIA exempts from disclosure information or records compiled for law enforcement purposes to the extent that the production of such records could reasonably be expected to constitute an unwarranted invasion of personal privacy. The documents involved in the present case were compiled for "law enforcement purposes" because they were gathered in connection with the investigation of the plaintiff and other persons for possible violations of the Rules of Conduct and federal Equal Employment Opportunity statutes. Subsection (b)(7)(C) is being asserted to protect information regarding the investigation of two Service employees other than the plaintiff, as the release of this information could reasonably be expected to constitute an unwarranted invasion of personal privacy.

of the Martin Declaration, which states that "[t]he documents involved in the present case were compiled for 'law enforcement purposes' because they were gathered in connection with the investigation of the plaintiff and other persons for possible violations of the Rules of Conduct and federal Equal Employment Opportunity statutes."

 In order to withhold information under exemption 7, "[t]he government has the burden of showing the records it seeks to shelter under Exemption 7 were compiled for adjudicatory or enforcement purposes." *Stern v. FBI*, 737 F.2d 84, 88 (D.C.Cir.1984).[6] Because the IRS was allegedly participating in a law enforcement investigation as an employer under the "Equal Employment Opportunity statutes," rather than as an agency enforcing the revenue laws, it is not completely obvious that it was proceeding with an "enforcement purpose." The IRS must "distinguish between internal investigations conducted for law enforcement purposes and general agency monitoring that might reveal evidence that could later give rise to a law enforcement investigation." *Id.* at 89. In making this distinction, the D.C. Circuit has outlined the following standard: "[A]n agency's investigation of its own employees is for 'law enforcement purposes' only if it focuses 'directly on specifically alleged illegal acts, acts which could, if proved, result in civil or criminal sanctions.'" *Id.*, (quoting *Rural Housing Alliance v. United States Dep't of Agriculture*, 498 F.2d 73, 81 (D.C.Cir.1974)).

 The difficulty in evaluating whether an affidavit has established an investigation's "law enforcement purpose" is that we do not wish to force the government to disclose so much information about the investigation or the particular documents that an exemption loses its intended effect. *See Lewis v. IRS*, 823 F.2d 375, 378 (9th Cir.1987) (quoting *Church of Scientology v. Dep't of the Army*,

611 F.2d 738, 742–43 (9th Cir.1979) ("the IRS 'need not specify its objections [to disclosure] in such detail as to compromise the secrecy of the information.'")). Our ultimate goal remains to "(1) assure that a party's right to information is not submerged beneath government obfuscation and mischaracterization, and (2) permit the court system effectively and efficiently to evaluate the factual nature of disputed information." *Vaughn v. United States*, 936 F.2d 862, 867 (6th Cir.1991) (quoting *Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974)).

 In light of the IRS' burdens, and the objectives in imposing those burdens, the Martin Declaration is clearly inadequate. The IRS' explanation of the "law enforcement purpose" is vague and unsubstantiated. In *King v. United States Dep't of Justice*, 830 F.2d 210, 230 (D.C.Cir.1987), the court stated that a declaration which "simply recite[d] the criminal statutes pursuant to which the investigation was undertaken," would have been insufficient without the presence of additional information about the plaintiff's connection to the crime in the agency's submissions to the district court.[7] By contrast, not only did the Martin Declaration fail to elaborate on the underlying offense, it failed to even "recite the ... statutes pursuant to which the investigation was undertaken." *Id.* It is by no means obvious what laws constitute the "federal Equal Employment Opportunity statutes." Title VII of the Civil Rights Act contains the heading "Equal Employment Opportunities" in the United States Code, *see* 42 U.S.C. § 2000e to § 2000e–17, but even if this section of the code had been cited, the IRS could hardly have hoped to satisfy its burden of demonstrating a law enforcement purpose by naming such a huge set of laws. Nor could the reference to possible violations of the Rules of Conduct

---

6. Thus, Patterson's failure to question at the district court level whether the IRS' investigation was for general monitoring of agency activities, rather than for law enforcement purposes, does not waive her right to pursue this argument on appeal. It remained the IRS' burden to establish its entitlement to the exemption. *See Becker*, 34 F.3d at 402. The IRS does not contest this conclusion in its brief.

7. Even this supplemented showing was only upheld under the deferential standard for a law enforcement agency's external investigations outlined in *Pratt v. Webster*, 673 F.2d 408, 420 (D.C.Cir.1982). *King*, 830 F.2d at 229–30. We are much less deferential to an agency's characterization of its internal investigations of its own employees. *See Stern*, 737 F.2d at 89.

satisfy the IRS' burden since such violations could not constitute a law enforcement purpose unless the activity which allegedly violated the rules independently violated the law. *See Stern,* 737 F.2d at 90. In effect, the general citation to an entire body of statutes contained in the United States Code under the heading "Equal Employment Opportunity statutes" suggests merely that some "ephemeral possibilities of [law] enforcement were anticipated by the agency in undertaking the investigation." *See Rural Housing Alliance,* 498 F.2d at 82 n. 48. This is insufficient to establish a "law enforcement purpose" under exemption 7(C). *Id.*

### 2. Exemption 6

Even if the Martin Declaration failed to justify the IRS' decision to withhold the information under exemption 7(C), the IRS argues that its nondisclosure was independently justified under exemption 6.[8] As with exemption 7(C), however, the Declaration is too sweeping to satisfy the IRS' burden in a FOIA case. It fails to "correlate the theories of exemptions with the particular textual segments which it desired exempted." *Schiller v. NLRB,* 964 F.2d 1205, 1209–10 (D.C.Cir.1992) (quoting *Schwartz v. IRS,* 511 F.2d 1303, 1306 (D.C.Cir.1975)). In the Martin Declaration, the withheld information was described generally as "results of investigations," "addresses," or "other identifying information." Based on this description, it is conceivable that some withheld information pertains to the results of certain investigations, but contains no identifying information

which would compromise any privacy interests.[9] We are left to rely upon the IRS' conclusory statement that all of the withheld information is exempt from disclosure under either exemption 6 or 7(C) or both. Even this assertion is questionable on its face. Martin only states that disclosure of the information "could" constitute a clearly unwarranted invasion of personal privacy, rather than that it "would" constitute such an invasion of privacy as the statute requires. 5 U.S.C. § 552(b)(6). Moreover, the Martin Declaration does not even state that all of the withheld information is covered by exemption 6. According to the Declaration, "[t]he Service has determined, pursuant to FOIA exemption (b)(6), that disclosure of *portions* of these five pages could constitute a clearly unwarranted invasion of the personal privacy of two Service employees other than the plaintiff." (emphasis added). Since the Declaration fails to correlate an exemption with each withheld portion of the text, one possible reading is that "portions" of the information withheld in the five pages implicate the privacy interests in exemption 6, while other "portions" of the withheld information, if exempt at all, may only implicate the privacy interests in exemption 7(C). Exemption 7(C)'s privacy protection, however, is not coextensive with the protection in exemption 6. *See Stern,* 737 F.2d at 91. According to the legislative history, the distinction in the statutory language "was intended to provide somewhat broader protection for privacy interests under Exemption 7(C) than normally afforded under Exemption 6." *Fund for*

---

8. Patterson argues that the IRS has waived any claim to exemption 6 on appeal since it explicitly reserved argument on that exemption in its motion for summary judgment. The IRS did, however, raise exemption 6 as an affirmative defense in its answer and in the Martin Declaration attached to its motion for summary judgment. Thus, although the district court did not discuss exemption 6 in its grant of summary judgment, we are not precluded from reaching it on appeal. *See Smith v. Richert,* 35 F.3d 300, 305 (7th Cir. 1994). The real "waiver" is the inadequacy of the IRS' showing in the district court with respect to both exemptions. The IRS may have identified the statutory exemptions it relied upon, but it failed to "demonstrate that the exemption applies to the documents in question." *Jordan v. United States Dep't of Justice,* 591 F.2d 753, 779 (D.C.Cir.1978).

9. Indeed, such a disclosure might inform the public about how the Equal Employment Opportunity statutes function and reveal the agency's "unwritten law" about the actions which will result in an investigation and the penalties which might then be forthcoming—exactly the type of information the FOIA is designed to disclose. *See U.S. Dept. of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749, 773, 109 S.Ct. 1468, 1481–82, 103 L.Ed.2d 774 (1989); *United States Dep't of Navy v. Federal Labor Relations Auth.,* 975 F.2d 348, 354 (7th Cir.1992); *see also PHE, Inc.,* 983 F.2d at 252 ("the FOIA mandates the release of materials that contain 'secret law,' i.e., materials that define standards for determining whether the law has been violated.").

*Constitutional Gov't v. National Archives and Records Serv.*, 656 F.2d 856, 862 (D.C.Cir.1981). Thus, any information which would have been protected under the privacy provisions in exemption 7(C) might not be under exemption 6. For example, while the "addresses" of IRS employees seem to fit within exemption 6, *see Federal Labor Relations Auth.*, 975 F.2d at 355, "other identifying information" might only be covered if the IRS makes a valid showing under exemption 7(C).[10] Since no attempt was made to describe the type of material redacted or withheld in each document and to specify the applicable exemption in each instance, we cannot evaluate the IRS' claim to the exemptions. *See Kimberlin v. Department of Treasury*, 774 F.2d 204, 210 (7th Cir.1985); *Maroscia v. Levi*, 569 F.2d 1000, 1003 (7th Cir. 1977) (concluding an affidavit was sufficient because, in discussing the withheld document, "[e]ach of the textual paragraphs is described in some detail, indicating the circumstances and the sensitivity of the information."). In *Schiller*, the court held that an agency affidavit which "refer[red] to entire documents and not any passages within them," did not satisfy the government's burden. *Id.*, 964 F.2d at 1209. Similarly, in *Wiener v. FBI*, 943 F.2d 972, 978–79 (9th Cir.1991), the court rejected the agency's showing where "[n]o effort [was] made to tailor the explanation to the specific document withheld." The FBI had provided a number of possible justifications for withholding documents without identifying the specific reason for withholding each document. The court called this an "obvious obstacle to effective advocacy." *Id.* In *PHE*,

*Inc.*, 983 F.2d at 250–52, two affidavits were evaluated. The FBI and the National Obscenity Enforcement Unit (NOEU) each submitted affidavits for the information they withheld. The FBI, which withheld approximately a page of material, described the substance of each piece of information withheld and justified the nondisclosure by reference to a specific exemption in each instance. Thus, its affidavit was deemed sufficient. By contrast, the NOEU affidavit, termed "vague and conclusory" by the court, was rejected because it failed to include "precise descriptions of the nature of the redacted material and provid[e] reasons why releasing each section would" implicate the claimed exemption. *Id.* at 252. Likewise, in *Krikorian v. Department of State*, 984 F.2d 461, 467 (D.C.Cir.1993), the court found that while portions of the ten withheld documents did logically fall within the claimed exemptions, a remand was necessary because the government had failed to provide "a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and *correlating those claims with the particular part of a withheld document to which they apply*." *Id.* (quoting *Schiller*, 964 F.2d at 1210).[11]

Furthermore, because the Martin Declaration lumps all of the withheld information together in justifying nondisclosure, the district court could not have independently evaluated whether exempt information alone was being withheld or deleted in each instance. For example, while deletions were made in four documents in the file, the eighth document was entirely withheld without addition-

10. The Martin Declaration does not elaborate on what "other identifying information" means. It could be physical features, job titles, office locations, telephone numbers, ethnic or racial backgrounds, salaries, etc. Obviously, depending upon the circumstances, some of these items viewed in isolation would not even be protected by exemption 7(C) let alone exemption 6. To provide a hypothetical example, a job description such as "secretary" might not affect privacy interests in a large office, but it might provide valuable insight into whether the agency's treatment of secretaries differs from its treatment of another category of employees such as "accountants."

11. We recognize that in several of these cases, a "Vaughn index" was relied upon in whole or in part. *See Schiller*, 964 F.2d at 1209; *Wiener*, 943 F.2d at 978. Often used as a supplement to or substitute for affidavits in a case with a large number of documents, the Vaughn index, named after the case in which it is adopted, *see Vaughn*, 484 F.2d 820, requires the government to list the title of the document or category of documents, the date of the document, the author and recipient, a detailed factual description of the document, and the statutory exemption claimed by the agency to support nondisclosure. *See Becker*, 34 F.3d at 401 n. 9. Although the index was not employed here, the type of disclosure is sufficiently similar to provide a useful comparison. *See Krikorian*, 984 F.2d at 466–67.

al explanation. As discussed earlier, the Martin Declaration only states that "portions" of these five pages could constitute a clearly unwarranted invasion of personal privacy. Under § 552(b), "[a]ny reasonable segregable portion of the record" must be disclosed. *See PHE, Inc.,* 983 F.2d at 252 ("non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions."); *Hopkins v. United States Dep't of Housing & Urban Dev.,* 929 F.2d 81, 85 (2d Cir.1991). The IRS is not entitled to withhold an entire document if only "portions" of the five pages contain information which is exempt. Perhaps the exempt information is so intertwined with the non-exempt that it cannot be segregated. Yet, the Martin Declaration did not even offer the type of "general conclusion" about the segregability of the exempt information which was rejected as inadequate in *Church of Scientology Int'l v. United States Dep't of Justice,* 30 F.3d 224, 231 (1st Cir.1994). Nor did the district court judge examine the one withheld document *in camera.*[12] *See Becker,* 34 F.3d at 406 (approving district court's lack of explicit finding on segregability where *in camera* review was conducted). The D.C. Circuit has stated that " '[a] district court that simply approve[s] the withholding of an entire document without entering a finding on segregability, or the lack thereof,' errs." *Krikorian,* 984 F.2d at 467 (quoting *Powell v. United States Bureau of Prisons,* 927 F.2d 1239, 1242 n. 4 (D.C.Cir.1991)). Thus, we remand to the district court on the adequacy of the IRS' showing in justifying its response to Patterson's first request.[13]

### B. Second FOIA Request

▮▮▮ Patterson's principal argument with respect to the IRS' response to her second request relates to the adequacy of the IRS' search for responsive documents.[14] One document was found in response to her first item, but no documents were located in response to her second and third items. Although Patterson failed to raise this issue before the district court, it is not waived *per se,* since it is the IRS' burden to establish the adequacy of its search. *Becker,* 34 F.3d at 405; *Maynard v. CIA,* 986 F.2d 547, 559 (1st Cir.1993). The search is judged by a standard of reasonableness. *Becker,* 34 F.3d at 405.

To satisfy its burden to demonstrate that an adequate search was conducted, the IRS submitted the Declaration of Stan Cleveland, the Disclosure Officer who replaced Ken Spencer after he left the IRS. Cleveland stated that Spencer had recorded the details of his search and the processing of the information responsive to the request on IRS Form 2747, entitled "Investigative History." According to Cleveland, his affidavit was based upon this form and his familiarity with the standard procedures followed by the Disclosure Officer for the processing of such FOIA requests. In his Declaration, Cleveland states that Spencer contacted Gerald Wendel, Chief of the Indianapolis Appeals Office on October 2, 1990 and requested personnel records from that office concerning disciplinary action involving Patterson. In answer to Spencer's request, the Boyer memorandum was found, but no documents responsive to items two or three were located.

Patterson argues that the IRS cannot satisfy its burden by submitting the declaration of a person who did not have personal knowledge of the search. Other courts, however, have held that "an agency need not submit

---

**12.** In fact, it appears that neither party even submitted to the court the redacted versions of the released documents until Patterson included them in her Omnibus Motion for Reconsideration after the district court had entered summary judgment in favor of the IRS.

**13.** This case reached us in the context of summary judgment. The district court is free to hold such further hearings and require further showings at trial as it deems appropriate to determine if the IRS' nondisclosure was appropriate under either exemption 6 or 7(C).

**14.** In Patterson's *pro se* brief, she does contest the IRS' right to withhold the Boyer Memorandum under exemption (b)(5). She also admits, though, that she has since received a copy of that document during discovery in her litigation against the agency. Thus, her claim with respect to the nondisclosure of this document is essentially moot. *See Wade,* 969 F.2d at 248 (citing *DeBold v. Stimson,* 735 F.2d 1037, 1040 (7th Cir.1984)). Furthermore, Patterson's appointed counsel did not raise this issue when the case was rebriefed.

an affidavit from the employee who actually conducted the search." *Maynard*, 986 F.2d at 560; *see SafeCard Serv., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C.Cir.1991); *Meeropol v. Meese*, 790 F.2d 942, 951 (D.C.Cir.1986). Cleveland's reliance on the information recorded in a standard IRS form is not unlike a supervisor's reliance on information provided by underlings, which was considered an acceptable showing in *Maynard. Id.*, 986 F.2d at 560, (citing *SafeCard Serv., Inc.*, 926 F.2d at 1201).

The actual information provided in Cleveland's Declaration indicates that the search was reasonable in light of Patterson's request. *See Gillin v. IRS*, 980 F.2d 819, 822 (1st Cir.1992) (quoting *Meeropol*, 790 F.2d at 956) ("The adequacy of an agency's search 'is measured by the reasonableness of the effort in light of the specific request.' "). The first item in Patterson's request specified the date of the document and described it as one authored by Boyer which recommended that disciplinary action be taken against Patterson. The second and third items sought any documents associated with the first document or any other documents in Boyer's possession concerning Patterson. Spencer's request for "personnel records concerning disciplinary action involving Stephanie Patterson" was broad enough to uncover responsive documents to each of her requests.

Patterson protests that Spencer's inquiry to Wendel did not completely encompass her third item, which sought "[a]ny and all documentation, or 'system of records', in [Boyer's] possession or under [Boyer's] control, authored by [Boyer] or originating from any other employee, involving the undersigned." Even if this were so, in order to survive a motion for summary judgment, Patterson still had the burden to show "that the agency might have discovered a responsive document had the agency conducted a reasonable search." *Maynard*, 986 F.2d at 560; *Miller v. United States Dep't of State*, 779 F.2d 1378, 1383 (8th Cir.1985) (citing *Weisberg v. United States Dep't of Justice*, 705 F.2d 1344, 1351 (D.C.Cir.1983)) (to avert summary judgment, the requester must show "some reason to think that the document would have turned up if the agency had

looked for it."). Since Patterson failed to question the adequacy of the IRS' search before the district court, she waived her opportunity to demonstrate that responsive documents existed. Indeed, on appeal, Patterson still did not provide the IRS or this court with any reason to believe that Boyer had in his possession or control any other documents involving her besides the one dated November 6, 1989. Thus, we will not disturb the grant of summary judgment as it relates to the second request.

## III.

For the reasons above, the decision of the district court is AFFIRMED IN PART and REVERSED AND REMANDED IN PART for further proceedings consistent with this opinion.