Maria de los Angeles **TORRES,**
Plaintiff,

v.

**CENTRAL INTELLIGENCE AGENCY, Defendants.**

**No. 98 C 149.**

United States District Court,
N.D. Illinois,
Eastern Division.

March 12, 1999.

Mathew J. Piers of Gessler, Hughes & Socol, Chicago, IL, for plaintiff.

Carole J. Ryczek of U.S. Attorney's Office, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Maria de los Angeles Torres ("Torres") filed this Freedom of Information Act ("FOIA")[1] action over a year ago, seeking "to compel the Central Intelligence Agency ('CIA') to produce any and all records

relating to the genesis, exodus and outcome of the program for evacuating unaccompanied children from Cuba, also referred to as the 'visa waiver' program, 'Operation Peter Pan,' or 'Operation Exodus,' between 1960 and 1965" (Complaint ¶ 1). Associate Professor Torres of DePaul University's Department of Political Science had been one of what she describes as "14,000 unaccompanied children evacuated from Cuba to the United States as part of the program which is the subject of the FOIA request at issue in this lawsuit" (Complaint ¶ 4), and for over 11 years she has engaged in research looking toward the production of a book on the subject (*id.*).

According to Complaint ¶ 6, Torres' FOIA efforts with CIA began fully five years before she filed suit here, having gone through several stages at the administrative level (*id.* ¶¶ 7–10). Ultimately CIA agreed to backdate Torres' April 3, 1996 amended appeal of its denial of her FOIA request to her original appeal date in early 1993 (*id.* ¶ 10), but CIA then rejected that amended appeal on the ground that "a thorough search ... conducted of those records which could reasonably be expected to contain documents responsive to Professor de los Angeles Torres' request ... has identified no records responsive to her request" (*id.* ¶ 11). Because Torres disbelieved that response, she brought the matter to this federal court.

At the beginning of April 1998 CIA moved for summary judgment under Fed. R.Civ.P. ("Rule") 56, supplementing its motion with a supporting Memorandum and with documentation conforming to this District Court's General Rule ("GR") 12(M), which has been adopted to facilitate the identification of any genuine issues of material fact (or the absence of any such issues). What followed was protracted discovery activity by Torres' counsel on her behalf, this Court having provided her

---

1. All FOIA citations will take the form "Section—," thus omitting repeated references to the statutory location as part of Title 5 of the United States Code.

counsel—over vigorous objections from CIA's counsel—with substantially more leeway (and time) than would ordinarily be appropriate under Rule 56(f).[2] In addition to pursuing the special and unusual measure referred to in n. 2, this Court granted Torres leave to conduct an extended deposition of Lee Strickland ("Strickland"), CIA's Information and Privacy Coordinator and the Chief of its Information Review Group, Office of Information Management. Strickland is the CIA person who had been responsible for overseeing all of the searches undertaken by CIA personnel in an effort to be responsive to Torres' request.

At long last—more than 10 months after the filing of CIA's Rule 56 motion—Torres has in turn filed her Memorandum in Opposition, together with her GR 12(N)(3) Response and supporting materials. Although Torres would have it that there are material factual issues such as to preclude the entry of summary judgment, this Court disagrees entirely. It therefore grants CIA's motion and dismisses this action on the merits.[3]

It should be said at the outset that it would be unjust to penalize CIA for its efforts to be more than forthcoming to Torres—efforts that it implemented by following Torres' further suggestions for possible leads (both out of a superabundance of caution and in an attempt to be as helpful as possible). In that regard there is considerable irony, for example, in Torres' often-repeated criticism of CIA for its having conducted a cryptonym search for "Peter Pan"—Torres complains that the label was a media name rather than a

technical one, so that any searching under that rubric was totally unlikely to turn up any documents (as recently as Torres' current Memorandum in Opposition ("Mem.") 5, that search is characterized as "essentially calculated to fail," and on the following page it is said to have been "known to be a futile effort").

After all, it was Torres *herself* who from the very beginning expressly framed her request in terms of the "Peter Pan Operation" (she used that term in the first sentence of her February 9, 1993 letter of appeal to CIA, Complaint Ex. C) and who, in the earlier-quoted opening paragraph of her Complaint here, also expressly described the scope of her inquiry "as the 'visa waiver' program, 'Operation Peter Pan,' or 'Operation Exodus.'" In exactly the same way, the April 3, 1996 amended appeal letter from Torres' lawyer to CIA's Assistant General Counsel (which Torres' current Mem. 3 describes as providing the "operative language in plaintiff's request") asked for all documents "concerning the evacuation of unaccompanied children from Cuba (also referred to as the 'visa waiver' program or the 'Operation Peter Pan' or 'Operation Exodus') between 1960 and 1965." It is surely a safe bet that if CIA had *failed* to search out "Peter Pan," Torres would have asserted *that* as a fatal FOIA delinquency on its part.

What has obviously occurred here is that Torres, who had already derived considerable information from other sources regarding the subject of her proposed book, decided that the circumstances—the existence of an operation that took place in

---

2. Among other things, this Court has itself engaged in an ex parte in camera inspection of a large block of unredacted documents submitted by CIA (despite its concerns as to security—see this Court's attached December 15, 1998 memorandum order).

3. CIA's Mem. 1 in support of its Rule 56 motion says that because it "has located no documents responsive to Plaintiff's FOIA request," summary judgment should be predicated on the basis that "this Court does not have jurisdiction to order the injunctive relief

that Plaintiff seeks against the CIA." That is really an imprecise use of the notion of "jurisdiction," for this Court clearly has subject matter jurisdiction over this action under Section 552(a)(4)(B). If CIA's position were sound, no court could ever decide a FOIA case in favor of a governmental defendant on the merits, for it would lose jurisdiction as soon as it found that no documents responsive to a plaintiff's FOIA request had been improperly withheld.

Castro's Cuba during the early 1960s (the very period of tensions that in part spawned the Bay of Pigs invasion), coupled with CIA's general reputation as our hush-hush agency in charge of running covert activities in foreign countries—pointed to CIA as the likely mother lode on the subject. That may have been a reasonable guess, but because the facts have turned out to the contrary—because the evacuation of Cuban children turned out not to be a CIA operation at all[4]—Torres can derive no comfort (or more importantly for present purposes, can derive no legal mileage) from her unsupported, to say nothing of unproved, speculation that CIA's files should have been chock full of relevant documents (see *In re Wade*, 969 F.2d 241, 249 n. 11 (7th Cir.1992)).

■ This case is not in the category of the most frequently encountered type of FOIA litigation, in which an agency seeks to avoid the production of documents whose existence is acknowledged by bringing those documents under the mantle of protection of one or more of the statutory exemptions (see Section 552(b)). Instead CIA says that it has engaged in more than the reasonable good faith search that the law requires (see, e.g., *Wade* as well as *Patterson v. IRS*, 56 F.3d 832, 840–41 (7th Cir.1995) and the cases cited in both of those decisions). CIA's burden of proof in that regard may be satisfied by "reasonably detailed nonconclusory affidavits submitted in good faith to support [its] claims of compliance" (*Wade*, 969 F.2d at 249 n. 11). *Oglesby v. United States Dep't of the Army*, 920 F.2d 57, 68 (D.C.Cir.1990) has provided a succinct statement of an agency's required showing for Rule 56 purposes:

A reasonably detailed affidavit, setting forth the search terms and the type of files likely to contain responsive materials (if such records exist) were searched, is necessary to afford a FOIA requester an opportunity to challenge the adequacy of the search and to allow the district court to determine if the search was adequate in order to grant summary judgment.

■ That standard has been more than met by CIA here, as amply demonstrated by Strickland's detailed Declaration and Supplemental Declaration in support of its motion. Torres Mem. 2 is flat-out wrong in asserting that "the material facts as to whether the CIA did perform a reasonable search are very much in dispute." Nor is that conclusion altered by the fact that some further searches that CIA undertook during the pendency of this litigation, when it essayed to assist Torres by widening an already reasonable search to encompass other terms suggested by her counsel, turned up a couple of pieces of paper—having no better than marginal relevance, and no substantive value, to Torres' research project—that were then delivered to Torres.[5] What is at best the de minimis nature of that delivery is not different, to pursue the mother lode metaphor further, from recovering one or two gold flakes as the result of months of looking for a vein of ore, or even of months of panning for a meaningful number of gold nuggets. After all, what the law requires is only a *reasonable*, and not necessarily a *perfect*, search (see, e.g., *Ethyl Corp. v. United States EPA*, 25 F.3d 1241, 1246 (4th Cir.1994) and cases cited there; *Oglesby*, 920 F.2d at 68).

4. This Court has not of course had access to CIA's documents other than the nearly 800 pages referred to in n. 2. But this Court can say with confidence that the entire tone and content of what it *has* had the opportunity to read supports CIA's disclaimer of its having been directly involved in the program that is of such interest to Torres.

5. Parenthetically in that respect, although CIA's motion was filed back in April 1998 this order granting summary judgment is of course being entered now, not nunc pro tunc as of that earlier date. Hence the question for decision is whether there is any genuine issue of material fact *now*—and for that purpose the existence or nonexistence of an issue of material fact must be the subject of a current and not a historical determination.

As stated earlier, on that score Strickland's sworn Declaration more than fills the bill. It describes the extensive searches taken by the Agency, which spent fully 600 man hours in examining millions of documents by computer or by hand (Declaration ¶ 31), including what Declaration ¶ 25 described in these terms (followed by some chapter and verse itemization in Declaration ¶¶ 26 through 30):

> Subsequent to this initial FOIA search, the CIA undertook the most exhaustive searches possible to locate documents responsive to Plaintiff's request, should they exist, and to otherwise establish as certainly as possible whether the CIA had information concerning the exodus of unaccompanied children from Cuba. These additional searches were undertaken by CIA as a matter of administrative discretion in light of the humanitarian concerns expressed by Plaintiff. These additional searches were undertaken by CIA voluntarily and were not in any way required by FOIA. In fact, these additional searches, as described below, went into far greater depth than is required by FOIA, which only mandates that searches be conducted in all files reasonably expected to contain responsive records.

■ What has gone before, then, conclusively demonstrates the appropriateness of CIA's Rule 56 motion for summary judgment. But because Torres also attempts to salvage something from this action by urging that she has "substantially prevailed" so as to trigger her entitlement to attorneys' fees and expenses under Section 552(a)(4)(E), this opinion goes on to address that subject as well.

In that respect the definitive teaching of *Farrar v. Hobby*, 506 U.S. 103, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992), though issued in the different context of 42 U.S.C. § 1988 ("Section 1988"), clearly requires the rejection of Torres' claim—both in analogous precedential terms and as a precedent from which the ruling in this case follows a fortiori. Although *Farrar, id.* at 112–13,

113 S.Ct. 566 found that a civil rights plaintiff who recovered only nominal damages was technically a "prevailing party" for Section 1988 purposes, the Supreme Court then held (1) that the degree of plaintiff's success goes directly to the reasonableness of any possible fee award (*id.* at 114, 113 S.Ct. 566) and (2) that the purely nominal success of the plaintiff in that case supported the denial of *all* fees (*id.* at 115, 113 S.Ct. 566).

That analysis alone would call, by parallel analogy, for the denial of Torres' request for attorneys' fees here because her "success," if any, was at most nominal. But the a fortiori nature of the present case in relation to *Farrar* stems from the added fact that the required standard under Section 552(a)(4)(E) is one of plaintiff's having "*substantially* prevailed" (unlike the less demanding Section 1988 reference to a "prevailing party")—and as this opinion has already indicated, the delivery to Torres of a couple of pages of not really meaningful material in consequence of CIA's efforts to go the extra mile simply does *not* qualify as her having "substantially" prevailed for such purposes.

Either of those lessons from *Farrar* would call for the denial of Torres' claim for attorneys' fees and expenses. Together they deliver a doubly fatal blow to that request.

### Conclusion

There are no genuine issues of material fact, and CIA is entitled to a judgment as a matter of law. Accordingly this action is dismissed. This Court further rejects Torres' claim for any award of attorneys' fees and expenses for each of the two independent reasons stated at the end of this opinion's substantive discussion.